## John C. Starkweather v. Herrick E. Martin and others.

*Deed:* Registry: *Seal:* Device: *Record entry:* Statutes. For the purpose of determining how far the absence on the registry of a deed, of any mark or device indicating a seal, or of any statement of the register that the original was sealed, would affect the validity of the record entry as evidence of title, the statute governing the execution and sealing of deeds, and that governing their registry, at the time, are regarded as in *pari materia*.

*Registry:* Seal: *Deed:* Inferences: *Evidence.* Under the laws in force in 1830 upon these subjects, the absence of any trace of the "device by way of seal " which a grantor was authorized to adopt as a sufficient seal, upon the record of a deed, is not sufficient to warrant an inference that the original was unsealed, or to justify the rejection of the record as evidence.

*Record entry:* Deed: *Seal:* Presumptions. Where such record entry is made by the proper officer and in the appropriate place for the registry of deeds, under a law permitting the registry of only sealed instruments, and the instrument is in the form of a warranty deed purporting to be acknowledged and dated at a time when it was the common and lawful course to seal conveyances and contrary to official duty to take the acknowledgment unless the conveyance was sealed, and where the conclusion, attestation clause, and certificate of acknowledgment of the instrument, all speak of it as under seal, it will be presumed that the original was sealed.

*Register: Seal: Clerical omission: Presumptions.* Whether or not it was the duty of the register under the law as it then stood, to put something of his own upon the record to indicate that the paper he recorded was sealed, his omission to do so will not overcome the presumption in such a case that the instrument itself was sealed.

*Finding of facts: Final judgment: Practice:* A finding of facts in an ejectment suit in which such a record entry, constituting an essential link in the chain of title, has been erroneously rejected as evidence, will not authorize a final judgment in the supreme court, since it proceeded on a state of facts wholly different from the case which would have been presented if this evidence had been admitted.

*Heard November 4.   Decided January 18.*

Error to Berrien Circuit.

*Arthur Brown* and *H. F. Severens,* for plaintiff in error.

*E. Bacon,* for defendants in error.

GRAVES, CH. J.

This was an ejectment by Starkweather against the defendants in error, commenced in May, 1866, to recover a parcel of land in Royalton, Berrien county, described in the declaration as part of section one, in township five south, of range nineteen west, and bounded as follows: Beginning at the quarter section post between said section one and section two; thence running due east forty chains and to the middle of said section one; thence due north until the line intersects the river St. Joseph; thence following said river down stream, on the banks thereof, to a point from which a due west line to said line between section one and two will enclose eighty acres by actual measurement.

The court heard the cause without a jury in December, 1870, and having been requested thereto by the respective parties, made a special finding, which was filed February 6th, 1872. By this finding it appears that all the defendants, except the Martins, suffered default. Judgment was given against the plaintiff, and he having taken exceptions to rulings at the trial, those exceptions were settled, and he now asks a revision of the proceedings on writ of error.

Although it is made a point by the plaintiff, that a feature which appeared in the defendant's title precluded them from asserting or maintaining that they were *bona fide* purchasers without notice as against him, as owner of the title he counted on, it would seem that the cause really turned on the exclusion of certain evidence he offered, and the points raised by the exclusion of that evidence are therefore regarded as the first to be examined. If we come to an opinion in his favor upon them, the other question becomes unimportant in the present attitude of the cause.

There was no dispute about the origin of the title, and the judge found upon the evidence, which was not controverted, that the land was sold by the United States to one Edward Smith, on the 6th day of October, 1830, and that Smith afterwards received his patent, dated April 1, 1831.

Each side claimed to deduce title from the patentee; the plaintiff contending for a chain of title to himself, the first link of which was a warranty deed from Edward Smith to James Sherman, dated October 7, 1830, recorded in Cass county, October 10, 1830, and in Berrien county, February 15, 1860; and the second link of which was a warranty deed from James Sherman to Benjamin Sherman, dated October 3, 1836, and recorded in Berrien county, April 22, 1837.

The defendants contended that the patentee quit-claimed to Timothy S. Smith, on the 6th day of August, 1849, that this deed was recorded in Berrien county, January 6, 1857; that Timothy S. Smith by James B. Sutherland, his attorney in fact, quit-claimed to Herrick E. Martin, one of the defendants, by deed dated April 9, 1858, and recorded in Berrien county the day after.

The plaintiff produced no original deeds, and sought to prove his chain of title from the record. He was allowed to put in evidence the Berrien record of the deed of 1830, from the patentee to James Sherman, and the record of the deed from James Sherman to Benjamin Sherman, but the

Cass county record of the deed of 1830 was excluded on the defendants' objections hereinafter noticed.

The defendants were allowed to give in evidence the original quit-claim deed from the patentee to Timothy S. Smith, and the certificate of its record in Berrien county, January 6, 1857; the original quit-claim deed from Timothy S. Smith by his attorney Sutherland, to the defendant Herrick E. Martin, and the certificate of its record in Berrien county, April 10, 1858, and the record of a power of attorney from Timothy S. Smith to Sutherland.

By a comparison of dates it will be observed that the deed from the patentee in the plaintiff's chain of title was nearly twenty years earlier than the corresponding deed in the defendants' chain, but that the record made of it in Berrien county, which was the record admitted in evidence, was about three years later than the record of the deed from the patentee in the defendants' chain of title.

It is obvious from this summary, that the Cass county record of the deed from Smith to Sherman, and which record was made, as before noticed, in October, 1830, and nearly twenty years before the deed from Smith to Smith was given, assumed importance.

The plaintiff produced a certified copy of the entry found in the records of Cass county, of the supposed deed from Smith to Sherman, and its certificates, and offered it in evidence. At the same time the record itself was exhibited. A copy of the writings as they appeared in the record book is set forth in the bill of exceptions, and it speaks the language of a formal warranty deed made October 7, 1830, by Edward Smith, of Berrien county, in the territory of Michigan, to James Sherman, jr., of Cayuga county, in the state of New York, and conveying in fee the premises in the declaration, for one hundred dollars. Immediately following the covenants, appear the conclusion, subscription, attestation, a note marking a correction, and the certificate of acknowledgment, in these terms:.

"In witness whereof the party of the first part hath hereunto set his hand and seal, the day and year first above written.

"Sealed and delivered, in presence of ⎫
  (the word, 'junior' was interlined ⎬ EDWARD SMITH.
  before execution, also one erased), ⎭
" ROBERT CLARK, BENJ. C. HOYT."

"TERRITORY OF MICHIGAN, ⎫ ss.
    *County of Monroe,* ⎭

"Personally came before me, one of the justices of the peace within and for the county of Monroe aforesaid, the within named Edward Smith, known to me to be the person described in and who executed the within deed; and acknowledged that he signed, sealed and delivered the same as his free act and deed, and for the uses and purposes therein mentioned. All which I certify according to the statute in such case made and provided.

"In testimony whereof I have hereunto set my hand and seal, this seventh day of October, in the year of our Lord, one thousand eight hundred and thirty, and the fifty-fifth year of the independence of the United States of America.
                  " PETER P. FERRY, [ L. S. ]
                      *Justice of the Peace.*"

An inspection of this entry did not disclose any thing upon it of the similitude or sign of a seal of the grantor, or the trace of any sign, device or statement of the register, to denote specifically that the original bore a seal. The defendants objected to the evidence on this ground, and the court excluded it.

The precise points thus presented have never been decided in this state, and their importance will be readily recognized by all who are acquainted with the manner in which our early records in many counties were made up, and have been handled and defaced in the course of years. Many titles, undoubtedly, depend upon similar questions. The real points to be investigated were neither mentioned nor considered in *Buell v. Irwin, 24 Mich., 145,* and none of

the Michigan cases referred to have any direct bearing. The subject is not free from difficulty. The decisions cited from other states and from England, and directed to resembling questions, are inharmonious. Moreover, the case is one peculiarly of local law, and among all the authorities cited, no one appears to have comprehended the same material data which are given here.

We have an entry as the record of a deed, made by a register of probate more than forty years ago, an entry made shortly after the organization of the county, when the country was new, and when, in some districts, there was great looseness, carelessness and irregularity in the making and care of records. The entry was certainly considered by the officer as authorized, and was as certainly intended to be a regular and legal record of a deed. The instrument related to premises comprehended by the territorial jurisdiction of the recording officer. It was his duty to record it if it was sealed. It was contrary to his duty to record it if it was not sealed. In this, counsel are agreed. They differ, however, in regard to the mode in which his duty required him to make up the record.

The defendants', counsel contends that he was required to make his entry so far correspond with the original as to denote its nature as a deed, a sealed instrument, a paper entitled to go on record; that to make a record of a deed it was essential to indicate upon the book, by some sign, device or statement of the register, that the original had a seal, and that an entry containing nothing of the kind, or any trace of any thing of the kind, does not purport to be a record, and does not tend to show an original sealed conveyance.

The plaintiff's counsel insist that the circumstances require the presumption that the original was so sealed as to satisfy all legal necessity, and they maintain that it was not incumbent on the register to go further than to transcribe the written and printed matter; that it was not required of him to copy, or attempt to copy, or put upon

or affix to his book an image of whatever the grantor may have treated as his seal, or to suggest by expressions or tokens of his own, that the paper was sealed. They contend that any thing which was allowed by law to be a constituent or appendage of the original, and which from its nature was incapable of being specifically ear-marked upon the record, was considered as an unrecordable badge of the original; and that any mere statement, suggestion or symbol of the register, to denote a sealing, and not answering to the character of a substantial copy, or even intended to stand as a copy, would have been in truth nothing more than an unauthorized and unofficial certificate of the officer based on his opinion, and wholly destitute of legal value.

It is not to be denied that these opposing positions, and the arguments made in their support, possess a good deal of force. The question to be considered naturally suggests the propriety of bringing into view the contemporary regulations for sealing and recording deeds, and their practical bearing upon conveyancing and recording. For the purpose of examining this case the two laws should be regarded as in *pari materia*.

Under the recording law of the territory in force in 1830, applicable to lands outside of Detroit, a deed, signed and sealed by the grantor, and signed by two or more witnesses, and acknowledged by the grantor, or proved by one or more of the subscribing witnesses, and having endorsed upon it a certificate of such acknowledgment or proof, signed by the person taking it, being one of the officers mentioned in the statute, was entitled to be "recorded in the office of the register of probate for the county;" and every deed was required to be "recorded in the order and as of the time when the same should be delivered to any register for that purpose, and to be considered as recorded from the time of such delivery." The register was enjoined to make an entry in the margin of the record, of the day, month, and year, and the time of the day when recorded,

and to endorse and sign a certificate on such deed, of the particular time when, and the book and page in which it was recorded.

While the law was thus very precise in delineating the course and duty of the register touching certain particulars in the matter of recording, it will not escape notice that in regard to other things it was very unprecise and at large, and that it did not in direct and express terms prescribe any method of transcription, or define what he should do to give his work the stamp of a complete and legal record. The instrument being seen to have been regularly executed, witnessed and authenticated, was then to be recorded.

The statute did not in terms require the certificates of acknowledgment or proof to be recorded. It did not specify that the spelling or punctuation should be followed, or in what way, if at all, the seal should be represented. The duty of making the entry in such form as to import the true original was expressed by the phrase, *"shall be recorded."* This undoubtedly contemplated that the original document, with all its written testimonial adjuncts, should be substantially copied. But it did not contemplate that in making the copy, incorrect spelling not varying the sense, or interlineations, or blots, must be counterfeited, or that any attempt should be made to present a *fac simile* of any feature.

In regard to this there appears to be no controversy. Indeed, the defendants' counsel, while insisting that the entry, in order to amount to a record and afford evidence that the original was sealed, must bear some mark, device or statement of the register upon it evincive of a seal, yet conceded that it was not essential that it should be in any special definite form, to the exclusion of every other. He contended that the seal should be represented in some intelligible way, and admitted that the word, *"seal,"* or the letters, " L. S. " would suffice. This admission implies that it was not encumbent on the register to try to represent the specific seal, but only that his record should import the fact that there was a seal.

We may now notice the law which prevailed here on the subject of sealing, when the deed was made and recorded in 1830; and we have no occasion to explore the curious learning connected with the introduction, use and former utility of private seals. Great changes have taken place, and the main, if not all, the substantial reasons which once existed for the practice of private sealing have disappeared. Certainly we look for them in vain here. Some remnants of the ancient law still linger in our code, through the indulgence of legislation, and they mainly seem to perpetuate useless distinctions and engender perplexing and unprofitable questions.

The law which prevailed in 1830 is found in the act of June 10, 1828. It contained two sections. The first enacted "that any instrument to which the person making the same shall affix any device by way of seal, shall be adjudged and held to be of the same force and obligation as if it were actually sealed." The second section applied the rule to all instruments executed after the 31st of December, 1827.—*Rev. Stat. 1833, p. 516.* A recent compilation contains what purports to have been a law passed, or rather adopted, by the governor and judges in 1822 in the same terms as the first section of the act of 1828.—*Territorial Laws, Vol. 1, p. 272.*

Assuming that this law of 1828 contemplated that the "device affixed" should be something visibly importing that it was meant for a seal, this instrument of 1830 may have been lawfully sealed with any such "device." The law chose to leave it to the fancy or caprice of the grantor, and then provided that an instrument thus constituted might be "recorded." Admitting that it was the register's duty, whatever the "device" was, to set some special sign of its existence upon the record, was the circumstance that the entry, on inspection, did not disclose the trace of any such sign, sufficient to warrant the opinion that the the original was unsealed, and to justify the rejection of the evidence?

That there was a genuine original, sealed or unsealed, seems not to be questioned, or to admit of question. The entry appeared to have been made by the proper officer, and in the appropriate place. It had stood, at the time of the trial, forty years, and nearly twenty when the patentee made the conflicting grant. The conclusion, and attestation clause, and the certificate of acknowledgment, all speak of the instrument as under seal. Unless it was sealed they were untrue. It was contrary to the duty of the justice to take the acknowledgment unless it was sealed. It was contrary to the duty of the register to record it unless it was sealed. It was the common course, the lawful course, to seal conveyances of real estate. These facts and incidents taken together afford a very strong presumption that the paper was sealed, and that the proceeding was meant to have effect, and not be useless.

On the other hand, we have the proposition that if the original was sealed, it was incumbent on the register to signify the fact in some special form; and on this proposition we have the argument that the absence of such an indication is a fatal defect in the record, whether the original was sealed or not, and at the same time affords an inference that the original was unsealed, and hence not entitled to be recorded.

Conceding that in strictness it was the duty of the register to put something of his own upon the record to indicate that the paper he recorded was sealed, the facts in the case will not allow his omission to do so, to overcome the evidence that the paper was sealed, or to do away with the record itself. When we reflect upon the state of the law as to sealing and recording in 1830, it is very easy to perceive that a register may have deemed it quite unimportant that he should make any special device of his own on the record. The omission under the circumstances is not entitled to the grave significance which the defendants ascribe to it.

Upon full consideration we think the evidence derived

from facts, inferences and presumptions, supports the opinion that the original instrument was sealed, and that enough appeared upon the face of the registry, when rightly viewed, to denote the fact. This being so, the omission of the register to attach some special mark or statement of his own to signify the same idea was at the most a mere clerical misprision not sufficient to detract from the validity or force of the entry as a record.

The rejection of the evidence, then, of the Cass record, was incorrect, and as the finding proceeded on a state of facts wholly different from the case which would have been presented if this evidence had been admitted, we have no finding in the cause, upon the proofs which ought to have been allowed and considered. As this court can not make a new finding, the case must be retried.

The points decided in favor of the plaintiff are not now open to review, and those ruled against him, which have not been considered, are either unimportant or will not be likely to come up again.

The judgment and finding should be set aside, with costs, and a new trial ordered.

CAMPBELL and COOLEY, JJ., concurred.

CHRISTIANCY, J., did not sit in this case.