# Richmond.

## REUSENS v. LAWSON, GUARDIAN, AND OTHERS.

### MARCH 2, 1895.

1. EJECTMENT—*Boundaries—Calls of Coterminous Tract—Grant—Surveyor's Books.*—In a controversy concerning the location or boundary of a tract of land patented by the Commonwealth, pursuant to a survey, the calls and descriptions of another survey made by the same surveyor, about the same time or recently thereafter, of a coterminous or neighboring tract, upon which last mentioned survey the Commonwealth issued a grant, whether to a party to the controversy or to a stranger, is proper evidence upon such question of location or boundary, unless clearly irrelevant. But a grant must have issued on such survey to render it admissible. And if the calls of the survey on the surveyor's books do not correspond with those of the grant, the books are not admissible in evidence; in case of doubt, the true location of the survey may be shown by evidence *aliunde.*

2. DEED BY CLERK OF DELINQUENT LAND—*Recitals in Deed—Adversary Possession*—The clerk of a court in making a deed of land sold as delinquent for taxes exercises a mere naked power, not coupled with an interest, and it is essential that every prerequisite to the exercise of such power, including the fact that he is clerk, be shown, in order to pass title by such deed. The deed itself is not sufficient for that purpose, though it is admissible to show color or claim of title, where title is claimed by adversary possession for the statutory period.

3. EJECTMENT—*Boundaries—Natural Objects—Courses and Distances.*—In questions of boundary, natural objects called for, marked lines, and reputed boundaries well established are to be preferred, in ascertaining the identity of the tract, to the courses and distances of the calls of the grant.

4. LANDLORD AND TENANT—*Adverse Claim of Tenant—Notice.*—A former tenant cannot set up an adverse claim to his landlord without full notice to the landlord of his disclaimer to hold as tenant, or his assertion of an adverse title, but such notice need not be so conclusive as to preclude all doubt.

Syllabus.

5. EJECTMENT—*Surveyor's Report—Declarations of Surveyor and of Third Party.*—Though the declarations of a surveyor are not admissible in evidence to contradict his report, still the declarations of other persons, if otherwise admissible, may be received in evidence to contradict said report.

6. INSTRUCTIONS.—An instruction which intimates that declarations which have been received in evidence are liable to suspicion of bias for interest and ought not to be considered, or to be considered only under certain circumstances, without designating which of such declarations, if any, are liable to that objection, is properly refused, as tending to mislead or confuse the jury.

7. EJECTMENT—*Lost Deed—Destruction of Record.*—In a controversy concerning land, proof that a deed conveying the land was executed and delivered by the grantor to the grantee, and that the book in which it was recorded has been destroyed and the deed lost, has the same effect as if the deed had not been lost, nor the record destroyed, and as if the deed were in evidence in the cause.

8. EJECTMENT—*Admissions of Former Owner—Mistake.*—Admissions of a former owner of a tract of land as to the boundaries of the tract are admissible in evidence in determining such boundary, but are not conclusive, and it may be shown that he was mistaken.

9. EJECTMENT—*Plaintiff's Title—Outstanding Title—Forfeiture to Commonwealth—Statute of Limitations—Adversary Possession.*—In an action of ejectment the plaintiff must recover on the strength of his own title, and if it appear that the legal title is in another, whether that other be the defendant, the Commonwealth, or some third person, it is sufficient to defeat the plaintiff. If it appears that the title has been forfeited to the Commonwealth for non-payment of taxes, or other cause, and there is no evidence that it has been redeemed ·by the owner, or resold or regranted by the Commonwealth, the presumption is that the title is still outstanding in the Commonwealth. The statute of limitations does not run against the Commonwealth, unless specially mentioned ; and if the statutory period has not elapsed before forfeiture to the Commonwealth, the statute ceases to run upon such forfeiture ; but if the adversary possession is complete against the owner before forfeiture, the possession of the occupant will not be disturbed, and the Commonwealth will take nothing by the forfeiture.

10. EJECTMENT—*Character of Outstanding Title.*—An outstanding title, sufficient to defeat a recovery in an action of ejectment, must be a present, subsisting, and operative legal title, upon which the owner could recover if asserting it by action.

11. EJECTMENT—*Ancient Writing Purporting to be a Deed of Conveyance—When a Question for Jury—Whether or not the Instrument is Sealed.*—Where a copy of a paper purporting to be a deed of conveyance of real

Argument.

estate is offered in evidence as a deed, and the copy does not disclose anything by way of trace, scroll, or device, to show that the original was sealed, but the original, executed upwards of fifty years before, purports to be under the hand and seal of the grantor ; the attesting witnesses declare that it was sealed and delivered in their presence ; the justices who took the acknowledgment declare that the grantor acknowledged the same to be his act and deed ; it is admitted to record as a deed ; possession of the land is taken under it by the grantee, and taxes paid on it by him ; it should be submitted to a jury to determine whether or not the original instrument was a sealed instrument.

12. EJECTMENT—*Exterior Boundaries—Exceptions from Grant—Burden of Proof.*—Where the title papers of the plaintiff in ejectment disclose the fact that the exterior boundaries of the survey upon which a grant or deed to one under whom he claims is founded, includes lands which have been excepted from the operation of the grant, or lands which have been aliened since the grant was issued, and which have been excepted from the operation of the deed of his grantor, it is incumbent on the *plaintiff* to show that the lands in controversy are not within the excepted or aliened lands.

Writ of error to a judgment of the Circuit Court of Patrick county, rendered March 24, 1893, in an action of ejectment wherein the plaintiff in error was the plaintiff and the defendants in error were the defendants.

*Reversed.*

This was an action of ejectment instituted in the Circuit Court of Patrick county by G. Reusens against John C. Lawson and Joe Haden, to recover possession of a tract of two hundred and six acres of land, situate in said county, and described in the declaration by metes and bounds, courses and distances. The landlords of John C. Lawson were, on their motion, admitted parties defendants and pleaded. The tract in suit was parcel of a larger tract of 70,000 acres. The grant of this larger tract to one of the plaintiff's remote grantors gives the courses and distances of the exterior boundaries of that tract, but it contains an exception of 7,000 acres, within those exterior lines, which is not granted, but the courses and

distances of which are not given.    There was also a contro-
versy as to whether a survey upon which it was alleged that
the grant of the 70,000 acres issued was admissible in evi-
dence, but this is fully set forth and discussed in the opinion
of the court.    There was evidence tending to show that the
defendants, or those under whom they claimed, had leased the
land in suit, or part of it, of parties under whom the plaintiff
claimed.

After all the evidence had been introduced, the plaintiff and
the defendants respectively asked for a number of instructions.
The instructions asked for, and the rulings of the court
thereon, so far as made grounds of exception, sufficiently ap-
pear from the opinion of the court, except that instructions 6
and 14 asked for by the plaintiff, defendants' No. 8 given by
the court, and instruction "B" given by the court, are not set
out in full in the opinion.

These instructions were as follows:

### *Plaintiff's No. 6.*

"The court instructs the jury that even if John J. Purvis,
or any former or subsequent owner of the lands granted to
Lee, made and adopted a survey excluding defendant's land
from the Lee grant, that that does not estop the plaintiff from
claiming and holding to the true boundaries of so much of
said Lee land as he has title to, provided no adverse possession
for the time required by law has intervened to defeat him."

### *Plaintiff's No. 14.*

"The court instructs the jury that there can be no adversary
possession of lands where the possession is consistent with the
title of the true owner, as where the occupant has leased or
acknowledged the title of the claimant, and a tenancy once
shown to exist is presumed to continue until the contrary be

proven, and no adverse possession can be set up by the tenant or anyone entering upon the land under the tenant until full notice of the denial of landlord's title is brought home to the landlord, and the evidence on this point must be so convincing as to preclude all doubt as to fact of notice on the part of the landlord. The statute of limitations only begins to run from the time the landlord had such notice. In computing the fifteen years of adverse possession to mature a title the time between 17 April, 1861, and 1 January, 1869, 7 years, 8 months and 13 days, must be excluded, and where lands have been forfeited and sold to the Commonwealth of Virginia for non-payment of taxes, and the 15 years had not run at date of sale, the adverse possession prior to forfeiture and adverse possession subsequent to the time of redemption, though it might in fact have been continuous, cannot be tacked or united in order to make out the 15 years and the time between forfeiture and redemption cannot be counted as any part of the 15 years.''

### Defendants' No. 8.

''The court instructs the jury that, although they may believe from the evidence that the land in controversy is covered by the deeds under which the plaintiff claims, yet if they further believe from the evidence that the defendants and those under whom they claim have been in the honest, peaceable, continuous, open, notorious and adverse possession of said land, paying taxes on the same, under color of title, for fifteen (15) years prior to the institution of this suit, they must find for the defendants.

In computing the time necessary to mature title by adverse possession, the time between 17 April, 1861, and January 1, 1869, 7 years, 8 months and 13 days, must be excluded.''

*Instruction "B."*

"The court instructs the jury that the chancery record of the suit of *Banks against Lee and Maund* can be considered by them as evidence of a claim or color of title to the property included in the Lee grant, and alleged to have been conveyed by Henry Lee to John J. Maund, and from said Maund to John Soley, Jr. In order for this claim of title or color of title to have matured into a perfect title, sufficient to supply the place of actual conveyances, the jury must believe from the evidence that the plaintiff, or those under whom he claims, has held the land in question, under such claim or color of title, by adverse possession for the length of time and in the manner set out in other instructions given herein upon this same subject."

*P. Bouldin, Jr., J. L. Thompkins* and *Phlegar & Johnson,* for the plaintiff in error.

*Anderson & Hairston,* for the defendants in error.

BUCHANAN, J.: This is a writ of error to a judgment of the Circuit Court of Patrick county in an action of ejectment in which the plaintiff in error was the plaintiff in that court.

Upon the trial of the cause, numerous questions were raised, and five bills of exceptions were taken by the plaintiff, all of which are made grounds of assignment of error here.

The plaintiff, in making out his claim of title, had placed in evidence a grant from the Commonwealth for 70,000 acres of land to Gen. Henry Lee, assignee of John Miller, for whom the land had been surveyed on the 14th day of April, 1795. In order to recover in the cause, it was, of course, necessary for him to identify the land sued for, which it was claimed lay near the northern boundary line of the 70,000-acre grant.

One of the questions much controverted in the cause was the location of this line. The plaintiff attempted to locate it at one place, and the defendants at another. Between these two lines the land in controversy, or the greater part of it, lies. The plaintiff, to sustain his contention, offered in evidence a copy of the survey from the land office upon which the grant to Gen. Lee was based, along with the grant and other evidence. The defendants, to sustain their contention, offered, among other evidence, the county surveyor's book, containing a survey for John Miller for the same 70,000 acres of land as they claim. They also offered in evidence copies from the surveyor's book of two other tracts of land upon which grants had been issued--one dated March 19, 1791, for 235 acres of land, to B. McGruder; and the other to L. McLean, for 45,000 acres, dated April 14, 1795. To the introduction of each of these surveys the plaintiff objected, but the court overruled his objections.

To these rulings of the court the first and second bills of exceptions were taken by the plaintiff. As they involve, to some extent, the same questions of law, they will be considered together.

In a controversy concerning the location or boundary of a tract of land patented by the Commonwealth, pursuant to a survey, the calls and descriptions of another survey made by the same surveyor, about the same time or recently thereafter, of a coterminous or neighboring tract, upon which last-mentioned survey the Commonwealth issued a grant, whether to a party to the controversy or to a stranger, is proper evidence upon such question of location or boundary, unless clearly irrelevant. *Overton* v. *Davisson*, 1 Gratt. 212, 222; *Clements* v. *Kyles*, 13 Gratt. 475, 479. All of these surveys were made by the same surveyor. Upon the McGruder survey and the McLean survey grants were issued by the Commonwealth. The McGruder survey is dated a few years before,

and the McLean survey upon the same day as that of Miller. The McLean survey calls for the Miller survey, and the evidence tends to show that the McGruder survey is a neighboring, if not an adjacent, tract of land. The McGruder and McLean surveys possess, therefore, all the requirements necessary to render them admissible in evidence upon the question of location or boundary.

The Miller survey, however, does not possess all the characteristics required for the admissibility of such evidence. It is true that it was made by the same surveyor, dated the same day with the McLean survey, but no grant was ever issued by the Commonwealth upon it. It is not the survey upon which the Lee grant issued. That grant was issued upon a survey filed in the land office of the Commonwealth; and, while there ought to have been found on the surveyor's book a survey identical with that upon which the grant was issued, the one upon the surveyor's book, and offered in evidence, is not such. It is claimed, however, that, while it is true the calls of the survey in the surveyor's book are not identical with the calls of the Lee grant, the corners, courses and distances of the northern boundary line of the Lee grant are the same in both papers, and that the only difference between the survey and grant along that line is that the survey in the surveyor's book gives a fuller description of the corners and lines called for. This difference will be better understood by giving the calls of each along the northern boundary of the grant. The calls of the grant are as follows: "Beginning at a poplar and persimmon on the north side of Big Dan river; thence new line N., 23 degrees E., 1,280 poles, to a chestnut tree; N., 40 E., 500 poles, to a black walnut tree; N., 40 E., 1,600 poles, to a black walnut tree and hickory near a path." The description of that line in the surveyor's book is: "Beginning at James Goins corner poplar and persimmon, on the north side of Big

Dan river; thence, with McLean's line, N., 23 degrees E., 1,280 poles, to McGruder's corner chestnut, on top of the mountain; thence new lines, North, 40 degrees East, 500, X [crossing] a branch to a black walnut; N., 40 E., 1,600 poles, X [crossing] six branches to a walnut and hickory near the path that leads from the head of Mayo river to meadows of Dan.''

If this additional description in the surveyor's book be treated as a part of the description of the land embraced within the Lee grant, and there be any conflict between them, which is to control in the location of the land? The description in the grant or the description in the surveyor's book? In running the first line from the beginning, the call of the grant is ''N., 23 degrees E., 1,280 poles, to a ·chestnut.'' Ought the surveyor to stop at the end of the 1,280 poles, the distance called for, or ought he to run to the McGruder corner on top of the mountain, as called for in the survey on the surveyor's book, without regard to the course or distance? The general rule is that course and distance must yield to other calls, especially to natural objects like the top of a mountain or a corner tree. If that be the correct rule for locating the Lee grant, it will be located, not by its own calls, but by the calls of the survey on the surveyor's books; and in so locating it the calls and description of the grant may be disregarded, and its location determined by the descriptions in another instrument, which is no part of the grant, and upon which it is not based. Taking the grant without the surveyor's book, course and distance would govern if no corner tree was found. For what purpose, then, was the surveyor's book introduced in evidence? It was to control and counteract the legitimate construction of the grant, and cause the jury to believe that the northern boundary of the Lee grant adjoined McLean's survey, ran to the top of the mountain, and cornered on McGruder's

chestnut, wherever it might be found. Whether it would or would not have that effect, it was not legal evidence. If it would not have that effect, it would be irrelevant, and for that reason improper, as it might embarrass and mislead the jury. If it would have that effect, it would control and counteract the legitimate construction of the Lee grant; and a surveyor's declarations, whether oral or written, are not admissible in evidence where they will contradict the official report of such surveyor upon which the Commonwealth has issued a grant. *Overton* v. *Davisson*, 1 Gratt. 211, 219; *Harriman* v. *Brown*, 8 Leigh, 697, 714, 715.

It is not to be understood by what I have said that the defendants did not have the right to prove that the Lee grant did adjoin the McLean survey, did corner on McGruder's chestnut corner, on the top of the mountain, and was bounded as stated in the survey on the surveyor's book. Evidence *aliunde* is admissible in all cases where there is a doubt as to the true location of the survey, or a question as to the application of a grant to its proper subject-matter. It is not a question of construction, but of location. It is a question of fact, to be determined by the jury by the aid of extrinsic evidence. But in such a case the hearsay declarations of the surveyor, whether oral or written, who made the survey upon which the grant was issued by the Commonwealth, will not be allowed to go to the jury to contradict his survey which was made while acting in his official capacity and under oath. I think that the court properly admitted in evidence the McGruder and McLean surveys, but erred in admitting the Miller survey on the county surveyor's book.

The next assignment of error, and based upon the third bill of exceptions, is that the deed of A. Staples, clerk, to Abram Staples and J. M. Redd, ought to have been excluded from the jury. This deed was made in 1835, and purported to be a tax deed for 5,000 acres of land, known as the "Ander-

son Survey,'' which had been forfeited and sold for delinquent taxes in the year 1832. At such sale the deed recites that Gilbert Bowman became the purchaser, and that he in the year 1834 transferred and sold all his right, title, and interest in and to the land to Staples and Redd.

The grounds upon which the plaintiff claims that the deed should have been excluded from the jury are that it was a tax deed, and that no authority for the sale and conveyance was shown; that it was not made to the purchaser at the tax sale; and that the defendants did not connect themselves with it.

There was no objection made to the deed when it was offered in evidence, but the plaintiff gave notice to the defendants that, unless they connected themselves with it, he would move the court to exclude it. There was no proof that the deed was made in pursuance of authority, or that the party styling himself clerk was in fact clerk. The clerk, in making such deed, was, exercising a mere naked power, not coupled with an interest. In such case the law requires that every prerequisite to the exercise of such power should precede it; and, as the validity of the act done depends upon the official character of the agent, that character must be proved, and his own recital in the deed is no evidence of the fact. In, the absence of such proof, the deed was clearly insufficient to show that the title of the delinquent tax-payer had passed to the grantees in the deed. It was, however, sufficient, notwithstanding these and other defects, to show color of title, and upon which to base a claim of adversary possession; for it is immaterial whether an adversary possession under a claim or color of title be under a good or bad, a legal or equitable title. *Shanks* v. *Lancaster*, 5 Gratt. 110, 120; Hutch. Land Tit., sec. 392, and cases cited. See *Jones* v. *Lemon*, 26 W. Va. 636. As there was some evidence in the cause tending to show that the defendants were in possession of the land in controversy, claiming under it, the court did not err in refusing to withdraw the deed from the jury.

The fourth assignment of error is based upon the fourth bill of exceptions taken by the plaintiff, because of the action of the court in refusing to give certain instructions asked for by him, in giving certain instructions asked for by the defendants, and in giving an instruction upon its own motion.

I will consider the instructions objected to in the order in which they are discussed in the plaintiff's petition and note of argument.

He contends that defendants' instruction No. 3 ought not to have been given. That instruction is as follows: "The court instructs the jury that, in questions of boundary, natural objects called for, marked lines and reputed boundaries, well established, should be preferred in ascertaining the identity of a tract of land to the courses and distances of the calls of the grant." The objection to the instruction is not that it does not state the law correctly, but that it assumes facts which were not in evidence. There was some admissible evidence in the cause tending to prove the facts upon which the court based its instruction. It was therefore proper for the court to give the instruction as requested.

The plaintiff insists that it was error in the court to give the defendants' instruction No. 8, and to refuse to give his instruction No. 14. The object of these instructions was to inform the jury what constituted adversary possession under color of title, and the length of time it must be so held to ripen into good title. The defendants' instruction stated the law upon that subject clearly and correctly, while the plaintiff's instruction contained a statement which is not, I think, the law in civil cases, viz., that, where the relation of landlord and tenant had once existed, the tenant could not be considered as holding adversely to his landlord until notice of that fact had been brought home to the landlord, by evidence "so convincing as to preclude all doubt as to the fact of notice on the part of the landlord." The relation of landlord and

tenant is one carefully guarded by the law, and it will not allow one who has come into the possession of land under another to set up an adverse claim to it, without full notice of his disclaimer or assertion of adverse title. *Emerick* v. *Tavenner*, 9 Gratt. 221, 237; *Creekmur* v. *Creekmur*, 75 Va. 430, 436. Stronger and clearer proof is required in some cases than in others, but I do not think the law requires in any civil case proof beyond all doubt, or all reasonable doubt. Certainly it is not required in a case like this. 1 Greenl. Ev. (15th ed.), sec. 13, and note; 2 Whart. Ev. sec. 1246; Best, Presumptions, sec. 190; *Ellis* v. *Buzzell*, 60 Me. 209, 211. The court did not, therefore, err in giving the defendants', nor in refusing to give the plaintiff's instruction.

The next assignment of error is that the court refused to give the plaintiff's instruction No. 9, which is as follows:

"The court instructs the jury that the statements or declarations of certain persons who are dead may be used as tending to locate a corner of an old survey, but, the persons who made the declaration must be such as had peculiar means of knowing the fact of which they speak, such as the surveyor or chain carrier who were engaged upon the original survey, or other persons present at such original survey, or the owner of the tract or of an adjoining tract calling for the same boundaries; the declarations of tenants, processioners, and others whose duty or interest would lead them to diligent inquiry and accurate information of the fact, always excluding those declarations which are liable to suspicion of bias from interest, and those made after the controversy arose, and those in contradiction of the original surveyor's official report of such survey. Such evidence, subject to the above exceptions, is admitted to have such weight as the jury may, under all the circumstances, consider it entitled to."

It is true that a surveyor's declarations are not admissible in evidence to contradict his own report, but it is not true

that the declarations of other persons, otherwise admissible, are not to be considered because they contradict his report. Such declarations of the surveyor are not admissible, because the policy of the law forbids that his solemn acts, done in the discharge of his official duty, should be annulled by his subsequent declarations, as hereinbefore shown. But no such reason applies to the declarations of other persons, where admissible, as hearsay evidence. The instruction was also objectionable because it tended to confuse and mislead the jury.

If there were any declarations in evidence in the cause liable to suspicion of bias from interest, as the instruction intimates, which the jury ought not to have considered, or ought to have considered only under certain circumstances, they ought to have been specially called to the attention of the court, so that it could have instructed the jury how to consider such evidence. The court, therefore, properly refused to give the instruction.

The plaintiff claims that instruction marked "B," given by the court of its own motion, is erroneous.

The original grant under which the plaintiff claimed was issued, as above stated, to Gen. Henry Lee in 1795. The plaintiff claimed that Gen. Lee had sold and conveyed 50,000 acres, of the 70,000 granted to him, to one J. J. Maund in the year 1798, and that Maund had sold and conveyed the same land to one John Soley in the year 1799; that these deeds were recorded in the office of the General Court in Richmond, and the records thereof burned in the year 1865. The plaintiff laid the foundation for proving the execution and delivery of those deeds by secondary evidence by proving that search had been made for the originals, and that the records of the General Court had been destroyed. He then offered in evidence a copy of an incomplete record of a chancery suit from the clerk's office of the Circuit Court of Williamsburg. That suit was brought by Henry Banks against Maund and

Lee, in which he claimed that he was the owner in fact of 20,000 acres of the 70,000 acres granted to Lee, charging that Lee had sold the whole 70,000 acres to Maund, who knew of his (Banks') interest therein, and asked for a specific execution of his contract. Maund and Lee both answered the bill, and each admitted Banks' right to the 20,000 acres. Lee admitted that he had sold and conveyed the other 50,000 to Maund, and Maund admitted that he had sold and conveyed the same to Soley. There is some question made as to whether the answer of Lee sufficiently appears to be his answer, as it is not signed by him, and the party who certifies that Lee made oath to it before him does not sign his certificate officially. The record, taken altogether, however, shows that it was his answer. The court admitted the copy of the record in that case, and, upon that evidence and the other evidence in the case, gave, of its motion, instruction B. This instruction treated that record as evidence of a claim of right or color of title to the 50,000 acres of land, and the jury were told, in order for it to ripen into a perfect title sufficient to supply the place of actual conveyance, they must believe that the plaintiff, or those under whom he claims, have held the land in question, under such claim or color of title, adversely for the statutory period. This, I think, was error. The admissions in the answers of Lee and Maund were that they respectively had sold and conveyed the land and that Soley, the vendee of Maund, was the legal owner thereof, and not merely the equitable owner. The proceedings in the chancery cause were not a link in the plaintiff's chain of title, and gave him no right in the property, either legal or equitable. It contained, however, admissions of Lee and Maund, through whom plaintiff claimed, that they had conveyed their title to the land to Soley, one of the plaintiff's remote grantors. It was evidence tending to establish a fact, not a link in the chain of title. Its only value, therefore, was as evidence tending to show

that the legal title to the land had passed from Lee to Soley.
When the deeds were executed and delivered, they had accom-
plished their whole purpose or end, as conveyances. If they,
or the books in which they were recorded, were afterwards de-
stroyed or lost, it could have no effect upon the title conveyed
by them. Of course, the original deeds were valuable as evi-
dence, and the recorded deeds valuable both as evidence and
notice; but whenever the fact was established that they had
been executed and delivered, by other evidence, although they
had been lost, and the books in which they were recorded de-
stroyed, the effect was the same as if the deeds had never been
lost and were in evidence before the jury. To hold otherwise,
as was done in the case, might result in great injustice. Lord
Coke (10 Coke, 92, cited in Shep. Touch. [Preston's edition.]
p. 73) says: "But in cases of great and notorious extremity,
which have occasioned the destruction of the deed, as by
casualty of fire, in that case he who suffers so great a loss may
be permitted on the general issue to prove the deed in evi-
dence to the jury by witnesses, in order that affliction may
not be added to affliction." The court, therefore, instead of
giving the instruction it did, ought, I think, to have instructed
the jury that if they believed from the evidence in the cause
that Lee had conveyed to Maund, and Maund had conveyed
to Soley, their conveyance passed the legal title.

The next assignment of error is that the court erred in mak-
ing an addition to plaintiff's instruction No. 7. The instruc-
tion, as asked for by the plaintiff, was in these words: "That
the opinion or supposition or verbal declaration of Purvis as
to where his true corner or lines were, cannot estop those
claiming under him from claiming to the true boundaries of
the Lee grant." To this instruction the court added: "Yet
the jury may consider any such declaration as evidence tend-
ing to show what was the true boundary of that patent."
There was evidence in the cause tending to show that Purvis,

one of the parties through whom the plaintiff claims, had made statements as to the boundary lines of the Lee grant, which, if established, would have shown that the land in controversy, or the greater part of it, was outside of the grant. If the jury believed that Purvis had made such statement, it would not estop the plaintiff from showing that he was mistaken, and that the grant did cover the land in controversy; but the statement, if made, was an admission which the jury had the right to consider in determining the true boundary of the Lee grant. The court properly made the addition, and the instruction, as amended, correctly states the law, and is not in conflict, as the plaintiff contends, with his instruction No. 6, which the court gave.

The next assignment of error is that the court ought not to have made the addition it did to plaintiff's instruction No. 12. That instruction stated to the jury that, where there is a conflict between the calls of a patent and the calls of the survey from the county surveyor's book, the calls in the patent must prevail. The addition made by the court was that, if "the patent is silent as to natural objects, corner trees, or other matters of description mentioned in the survey, the jury may consider the survey as evidence tending to identify the true boundary of the land embraced in the patent." This instruction was based upon the fact that the survey of the Lee grant, as claimed by the defendants, and found upon the county surveyor's book, was in evidence; but as that survey was improperly admitted in evidence, and will not be before the jury upon the next trial, the instruction in question would not be applicable to the facts of the case. That being so, it is unnecessary to discuss the question whether, upon the evidence in the case, the instruction, without or with the addition made by the court, was correct or incorrect.

The next assignment of error is that the court erred in refusing to give plaintiff's instruction No. 1, which is as follows:

"The court instructs the jury that an outstanding title in another to defeat the action of ejectment must be a present, outstanding, operative, and available legal title on which the owner could recover against either of the contending parties if asserting it by action; that a title forfeited to the Commonwealth, which has not been redeemed, is not sufficient to defeat the plaintiff; that the jury may presume this outstanding legal title to be extinguished in favor of the claimant who shows long possession of the lands in himself and those through whom he claims."

The instruction, I think, correctly states the law that an outstanding title, sufficient to defeat a recovery in an action of ejectment, must be a present, subsisting, and operative legal title, upon which the owner could recover if asserting it by action.   3 Wait, Act & Def. 109, 110; 6 Am. & Eng. Enc. Law, 245; *Wilcher* v. *Robertson*, 78 Va. 602, 620.   But the other branch of the instruction is, I think, erroneous. There is no reason why a defendant in an action of ejectment should not be permitted to rely upon an outstanding legal title in the Commonwealth.   The plaintiff must rely upon the strength of his own title, and if it appear in the cause that the legal title is in another, whether that other be the defendant, the Commonwealth, or some other person, it shows that the plaintiff has not the legal title, and it is therefore sufficient to defeat his recovery.   If it appears in the cause that the title to a tract of land granted by the Commonwealth has been forfeited to it for the non-payment of taxes or other cause, and there is no evidence that it has been redeemed by the owner or resold or regranted by the Commonwealth, there is no presumption that such title has been extinguished in favor of a claimant who shows long possession.   On the contrary, the presumption is that the title is still outstanding in the Commonwealth.   The statute of limitations never runs against the Commonwealth, unless there be an express provision in the

statute to that effect, and there is no such provision in our·
statute.  *Shanks* v. *Lancaster*, 5 Gratt. 110, 119; *Koiner* v.
*Rankin*, 11 Gratt. 420, 425.  There can be neither dissesin
nor adversary possession as against the Commonwealth in the
legal acceptance of those terms as applied between individual
citizens, and therefore there can be no adverse holding against
the Commonwealth while the title is vested in it.  If the land
be granted by the Commonwealth, and an adversary posses-
sion has commenced against the owner of the legal title, and
his land is afterwards forfeited to the Commonwealth, such
possession would cease to be adversary as against the Common-
wealth until the land is resold or regranted by it.  Of course,
if the adverse possession had been sufficiently long to bar the
original owner's right of recovery before the forfeiture took
place, the occupant's possession would not cease to be adver-
sary, for the reason that, when the forfeiture occurred, the
original owner had lost his title by adverse possession, and the
Commonwealth took nothing by the forfeiture.  *Smith* v.
*Chapman*, 10 Gratt. 445, 464; *Usher's Heirs* v. *Pride*, 15
Gratt. 190, 201; *Hall* v. *Webb*, 21 W. Va. 318, 322; Hutch.
Land Tit. pp. 238, 239.  The instruction was, I think, prop-
erly refused.

The plaintiff, in making out his claim of title, offered to
read in evidence a copy of a writing purporting to be a deed
from John M. Russell, of Cambridge, Mass., to Henry O.
Middleton, of Fredericksburg, Va., dated July 27, in the year
1838, for the conveyance of the 50,000 acres of land herein-
before referred to.  The defendants objected to it, but the
court overruled the objection, and·permitted it to be read to
the jury; and afterwards, upon motion of the defendants, gave
the jury this instruction:

"The court instructs the jury that the paper purporting to
be a deed of conveyance from J. Miller Russell to H. O.
Middleton, dated July 27, 1838, offered in evidence by the

plaintiff, did not convey the legal title to the land therein mentioned, but only an equitable interest in said land—the said paper having no seal or scroll attached to the grantor's name, but said paper is sufficient basis upon which to found a claim or color of title; and if the jury believe that the plaintiffs, or those under whom they claim, held said land, under that paper as a color of title, by adverse possession for the length of time required by law, then the plaintiffs' right and title is as good as it would have been had that paper been a deed properly executed.''

The plaintiff objected to the instruction, and excepted to the action of the court in giving it.    The correctness of this instruction depends upon the fact whether or not the original paper, a copy of which was read in evidence, was under seal. If it was under seal, it operated to convey all the title of the grantor, for it possessed all the other requisites of a good deed.    The copy of the paper does not disclose anything, by way of trace, scroll, or device, to show that the original was sealed.    There is, however, a recognition of the *seal* in the body of the instrument, in this language: "In witness whereof, the said John Miller Russell hath hereunto *set his hand and seal*,'' the day and year aforesaid.    There are two attesting witnesses, and they declare that the alleged deed was "signed, *sealed*, and delivered in their presence.''    The certificate of the two justices who took the acknowledgment states that the grantor acknowledged "the same to be his *act and deed.*''    The clerk of the supreme judicial court of Massachusetts certifies that the persons who took the acknowledgment were Justices of the Peace "at the time of taking the acknowledgment of the grantor in the above *deed.*''    The clerk of the County Court of Patrick county, who admitted the paper to record on the 25th day of January, in the year 1840, certifies that "*this deed*, from John Miller Russell to Henry O. Middle-

ton, with the certificate of acknowledgment thereon indorsed (authenticated according to the Act of Congress), was presented in the clerk's office aforesaid and admitted to record." The land books of Patrick county show that the 50,000 acres of land, except certain small tracts sold off, were charged to John M. Russell for the purposes of taxation from the years 1818 to 1839, inclusive. It also appeared in 1840 (the year the alleged deed was admitted to record) that the land was transferred on the land books for the purposes of taxation from Russell to Middleton, and continued to be so charged until the year 1850, when it was transferred to J. J. Purvis, to whom Middleton conveyed the land, and was charged to Purvis from that time until 1888, when it was transferred on the land books to the plaintiff. The evidence further tends to show that Middleton, or those who claim under him, exercised acts of ownership over the land, and were in possession of some part of it as early as the year 1853.

The precise point here presented has not been decided in this State, and none of the Virginia decisions referred to by counsel have any direct bearing upon the subject. It is said by text-writers that at common law, even though no impression appear upon the parchment or paper, still, if the instrument purports to be a deed, and on proper stamps, and be stated in the attestation of the witnesses to have been duly sealed and delivered, it will, in the absence of proof to the contrary, and especially if it be an ancient instrument, be presumed to have been sealed. Tayl. Ev. sec. 149 (Old Ed. sec. 128); 1 Sugd. Powers, 282, 283; 1 Phil. Ev. side p. 610, note. Such seems to be the rule in England and in those States where the common-law rule remains unchanged. In the case of *Parks* v. *Hewlett*, 9 Leigh, 511, 517, 518, Judge Parker quotes with approval the rule as above stated. Mr. Sugden, he says, upon the authority of Lord Eldon, states the doctrine to be as follows: "If, in the attestation of an in-

strument, it is stated to have been sealed, it will, in the absence of evidence to the contrary, be presumed to have been sealed, although no impression appear on the parchment or paper.''

In the absence of other facts, I do not think such a paper as Judge Parker describes could be held in this State to be a sealed instrument. If however, an original instrument, more than fifty years old, was offered in evidence, and was a good deed in form and substance, except that it lacked the wax, wafer, scroll, or other mark of a seal upon it, purported to convey land, recognized the seal in the body of the instrument, was attested by witnesses who declared that it was signed, sealed, and delivered in their presence, was acknowledged as a deed before the officers taking the acknowledgment, was stated by the clerk (who certified to the official character of the officers who took the acknowledgment) to be the acknowledgment of a deed, was admitted to record as a deed, the land conveyed by it at once transferred on the land books for the purposes of taxation from the vendor to the vendee (which could not be legally done unless it was a conveyance of the land—chapter 183, sec. 30, Rev. Code 1819), with evidence tending to show the payment of taxes thereon, acts of ownership exercised over and possession taken of part of the land, I think the question whether or not it had been properly sealed before its delivery, clearly, ought to be submitted to the jury. And if, under such circumstances, it would be proper to submit the question to the jury where the original is offered in evidence, is there any good reason, when the original is lost, and a copy offered in evidence, under the same circumstances, why the question of sealing should not also be submitted to the jury ? I find but little discussion of the subject, and the views presented are not in accord. Some of the cases hold that, since it was the duty of the clerk recording such instrument to have made a true copy of it on his records, the pre-

sumption is that he did so. In the case of *Switzer* v. *Knapps*, 10 Iowa, 72, which is the leading as well as one of the few cases taking that view, the court said that, where the record of a deed does not show a copy of the seal, as such copies are usually made on the records, the presumption is that there was no seal to the original. In the absence of other facts, such as appear in this cause, I think that this is a correct statement of the law.

In the case of *Williams* v. *Bass*, 22 Vt. 352, "the plaintiff, to prove his title to land, offered in evidence an office copy of a deed in his chain of title, which contained no appearance on its face that the original was sealed by the grantor, and it did not appear that possession had ever been taken of the land under the deed. It was held in that case that such copy was not competent evidence. The antiquity alone of the deed, apparently defective, was not sufficient to justify the presumption of its due execution, neither could such presumption be raised from the fact that the deed was acknowledged and recorded, the record showing only an imperfect deed." But the court said: "Had the deed of French [the grantor] been followed by possession, it would seem, from the authorities, there could be no doubt but that the presumption of its due execution would be fully warranted. * * * Neither the grantor, French, nor those claiming under him, were ever in the actual possession of the land, nor is there any evidence in the case upon which to base the presumption that the deed contained a seal but its antiquity; and this, we think, the current of authority upon the subject will hardly justify." The deed referred to in that case was dated in 1795, and the trial of the case was in 1849.

There is another class of cases, which hold that the presumption that the original was sealed is more just and natural where the original instrument is lost, and resort is had to secondary evidence of its contents. Mr. Justice Field in the

case of *Le Franc* v. *Richmond*, 5 Sawy. 601, 603, Fed. Cas. No. 8,209, takes that view, after quoting with approval the doctrine laid down by Sugden on Powers, as cited above. In the case of *Flowery Min. Co.* v. *North Bonanza Min. Co.*, 16 Nev. 302, it was held that the recording of the seal to a deed is not absolutely essential. If the original instrument cannot be produced, and the record thereof is offered in evidence, the existence of the seal will be presumed from the statement in the deed that the grantor did set his hand and affix his seal thereto, and from the attestation clause that it was signed, sealed, and delivered in the presence of witnesses. In the case of *Starkweather* v. *Martin*, 28 Mich. 471, the court, of which Judges Cooley and Christiancy were members, decided that where an instrument is recorded by the proper officer, and in the appropriate place for recording deeds, under a law permitting the registry of sealed instruments only, and the instrument is in the form of a warranty deed, purporting to be acknowledged and dated at a time when it was the common and lawful course to seal conveyances, and contrary to official duty to take the acknowledgment unless the instrument was sealed, and where the conclusion, attestation clause, and certificate of acknowledgment of the instrument all speak of it as under seal, it will be presumed that the original was sealed. And it further held that the presumption in such a case that the instrument itself was sealed will not be overcome by the omission of the register of deeds to put something of his own upon the record to indicate that the paper he recorded was sealed. The deed in that case was forty years old. In many respects that case, on this point, was similar to the case at bar. See, also, *Smith* v. *Dall*, 13 Call. 510; *McCoy* v. *Cassidy* (Mo. Sup.) 9 S. W. 926; *Aycock* v. *Railroad Co.*, 89 N. C. 321; *Hedden* v. *Overton*, 4 Bibb, 406; 1 Devl. Deeds, sec. 700.

The weight of authority, meagre as it is, and the better

reason, seem to be in favor of allowing such an instrument to go to the jury, for it to say, upon all the evidence in the cause, whether or not the original instrument was properly sealed. Whether such paper was a sealed or unsealed instrument was formerly treated as a matter of law, to be determined by the court, but seems now considered a question of fact, and is in all cases submitted to the jury. Tayl. Ev. sec. 149 (Old Ed. sec. 128), note.

I think, therefore, that instruction erroneous, and that the court ought to have submitted the question whether or not the original instrument was sealed to the jury, with the instruction that, if they believed from the evidence in the cause that it was sealed, then its effect was to convey, not only the equitable, but all, the title of the grantor, Russell, to the grantee, Middleton, in the 50,000-acre tract of land.

The plaintiff moved the trial court to set aside the verdict, and grant him a new trial, on the ground that it was contrary to the law and the evidence, and because of erroneous rulings of the court during the progress of the trial; and the refusal of the court to sustain his motion is assigned as a ground of error.

As hereinbefore shown, the court erred in admitting certain evidence, and in giving and refusing certain instructions; and for such errors the verdict will have to be set aside, and a new trial ordered, unless it be true, as defendants insist, that these errors did not prejudice the plaintiff, and that a verdict in his favor could not have been rendered by the jury, or sustained by the court, upon the case as made by the plaintiff, even if no improper evidence had been admitted, and no error committed in giving or refusing instructions.

The defendants base this contention upon the ground that the grant under which the plaintiff claims contains an exception of 7,000 acres of land, the title to which never passed to the plaintiff, and that prior claimants under the Lee grant had

sold and conveyed, of the lands embraced within such grant,
more lands than are in controversy in this case. The defend-
ants insist that these facts appear from the plaintiff's own
evidence, and that in such a case the plaintiff must not only
connect himself with the Commonwealth's title, and show the
exterior boundaries of the grant under which he claims, but
that he must go further, and prove that the lands in contro-
versy are not within the lands excepted in the grant, nor
within the lands so sold and conveyed, and that the plaintiff,
having wholly failed to do this, did not make out a *prima
facie* case for recovery.

It does appear from the land book and certain deeds in-
troduced by the plaintiff that small portions of the Lee grant
had been aliened by those under whom the plaintiff claims,
but this fact does not appear from the papers introduced by
him to make out his chain of title, but only from other papers
introduced for a different purpose. The facts as to the aliened
lands, therefore, do not sustain the defendants' contention,
but it does appear from the plaintiff's chain of title that 7,000
acres of land were excepted from the boundary embraced
within the Lee grant, under which plaintiff claims. That
grant contains the following exception or reservation: "But
it is always to be understood that the survey upon which this
grant is founded includes 7,000 acres (exclusive of the above
quantity of 70,000 acres), all of which having a preference by
law to the warrant and right upon which this grant is founded,
liberty is reserved that the same shall be firm and valid, and
may be carried into grant or grants, and this grant shall be
no bar in law or equity to the confirmation of the title or titles
to the same as before mentioned and reserved, with its ap-
purtenances, to have and to hold the said tract or parcel of
land, with its appurtenances, to the said Henry Lee (except as
before excepted) and his heirs, forever." The plaintiff insists
that the decision of this court in the case of *Hopkins* v. *Ward,*

6 Munf. 38, settles the question under consideration in his favor, and that he has made out a *prima facie* case for recovery. It is true that in that case this court held, in construing a similar grant, that " under the terms of the patent exhibited in that case, the grantee was entitled to all the land contained within the metes and bounds thereof, subject, however, to the reservation in said patent contained, and that in the action before us the appellant was entitled to recover all the said land, except such as the appellees might show themselves entitled to under the reservation aforesaid." But in the next case which came before the court (*Nicholas* v. *Covey*, 4 Rand. 365) that view did not prevail; and it was unanimously held that the land embraced in such exception or reservation did not pass at all to the grantees, and that, if the first equitable claimant does not perfect his right to the excepted land, any other person may enter the same as waste or unappropriated, and obtain a grant therefor; that the title to the excepted lands was not in any manner affected by such grant; and that it remained precisely as if no such grant had ever been issued. The construction given in *Nichols* v. *Covey*, was followed in *Trotter* v. *Newton*, 30 Gratt. 582, and in *Carter* v. *Hagan*, 75 Va. 557, and now may be regarded as the settled construction of such grants in this State. The same construction has been given to such grants by the Supreme Court of the United States and by the courts of last resort in the States of Kentucky and West Virginia. *Scott* v. *Ratliffe*, 5 Pet. 86; *Armstrong* v. *Morrill*, 14 Wall. 120; *Halsted* v. *Buster*, 140 U. S. 273; *Madison's Heirs* v. *Owens*, Litt. Sel. Cas. 281; *Bryan* v. *Willard*, 21 W. Va. 65; *Stockton* v. *Morriss*, 39 W. Va. 432.

No title having passed, therefore, by the Lee grant to the 7,000 acres excepted, the plaintiff would not be entitled to recover the land in controversy if it lies within the excepted lands. But upon whom is the burden of proof to show the

location of such lands? The defendants insist that the plaintiff must show that the land in controversy is not within the excepted lands. The plaintiff insists that the defendants must show that it is within such excepted lands if they rely upon an outstanding title to defeat his recovery. Ordinarily, the burden of proof is upon the party claiming or holding the affirmative of the issue. There are, however, some exceptions to this rule. Mr. Wharton says that he who undertakes in a court of justice to establish a claim against another must produce the proof necessary to make good his contention. This proof may be either affirmative or negative. Whatever it is, it must be produced by the party who seeks forensically to establish such claim. 1 Whart. Ev. sec. 356.

One of the rules of pleading is that where there is an exception incorporated in the general clause, whether it be in a statute or in a private contract, unless that exception in such general clause be negatived in pleading the clause, no offense or cause of action will appear in the indictment or declaration when compared with the statute or the contract; but, when the exception or provision is in a subsequent substantive clause, the case contemplated in the enacting or general clause may be fully stated, without negativing the exception or proviso, as a *prima facie* case is stated; and it is for the party who relies upon the matter of excuse or defense furnished by the statute or contract to bring it forward in his defense. *U. S.* v. *Cook*, 17 Wall. 168-173; *Land Grant Co.* v. *Dawson*, 151 U. S. 586-604. This is not always a rule of pleading, but is sometimes a rule of evidence. *Land Grant Co.* v. *Dawson*, *supra*; *Osborn* v. *Lovell*, 36 Mich. 246-250 (Judge Cooley).

As the pleadings in an action of ejectment in this State are very general, neither party setting out or referring to his title papers, it would seem that the party whose duty it would have been to set out such general clause together with the

exception if special pleadings had been required, and to have sustained his pleadings by testimony, must, where he is not required to plead them specially, make the same proof, if he offers them in evidence, as would have been required if they had been specially pleaded.    The exception of the 7,000 acres of land in the Lee grant is a part of the general conveying clause; and, as this grant was introduced in evidence by the plaintiff to make out his case, it would seem that, under this rule of law, he must, in order to show title to the land in controversy, prove that it was not within the lands excepted.

Again, the plaintiff, in an action of ejectment, recovers only upon the strength of his own title, and he must show that he has the legal title to and the right to the possession of the land in controversy.    He must always, in the first instance, make out a clear and substantial possessory title to the particular land in controversy (2 Greenl. Ev., secs. 303-304; Adams, Ej., p. 319; *Land Grant Co.* v. *Dawson*, 151 U. S., at page 604); for possession is always *prima facie* evidence of title, and the party in possession cannot be deprived of his possession by any person but the rightful owner, who has the right to the possession (2 Greenl. Ev., sec. 331), except in certain cases, which do not affect the question now under discussion.

The plaintiff avers that the defendants are unlawfully withholding his land from him.    The title paper upon which he relies shows that there are 7,000 acres of land within the exterior boundaries of his grant which he does not own.    If he locates the exterior boundaries, and connects himself with the Commonwealth's title, and does not show that the land in controversy is not within the excepted 7,000 acres, how can the jury say that the defendants are unlawfully withholding his land ?    Has he proved that the land in controversy is his land ?    How can the jury say that the defendants are not on the excepted land unless it be shown where the excepted land lies ?    The jury have no right to presume, because the

excepted portion is but a small part of the whole boundary, that the land in controversy is most probably in the plaintiff's boundary, and therefore so find. To do this would be to violate the well-settled rule of law that no man will be presumed to have committed a trespass or to have done an unlawful act. Again, the defendants' possession is *prima facie* evidence that they are the owners of the legal title to the land in their possession, and the plaintiff's evidence does not disprove this nor destroy the presumption of a rightful possession in the defendants.

It is said that to require the plaintiff to assume such a burden imposes upon him a great hardship, if not an impossible task. If it does, it was self-imposed. He, or those under whom he claims, took the grant with the exception in it. There would have been little difficulty in locating the excepted lands and the grantee's own land when the grant issued. The facts upon which the exception depends were within the knowledge of the plaintiff, or those under whom he claims. If he, or those under whom he claims, have delayed ascertaining the boundaries of these excepted lands and the boundaries of his own land until the means of doing so have been lessened or lost, he cannot complain, as it is the result of his or their negligence. At least, well-settled rules of law ought not to be departed from in order that a party in possession of land may be deprived of that possession by another who does not show that he has the legal title to or the right to the possession of it.

At an early day this question came before the Supreme Court of Kentucky in the case of *Guthrie* v. *Lewis*, 1 T. B. Mon. 142, and that court held that where plaintiff derives title under a deed conveying the whole tract patented, except parcels thereof before conveyed to persons named, it is incumbent on him, not on the defendant who claims adversely to the patent, to show that the land in controversy is not embraced within the exception.

In *Madison's Heirs* v. *Owens*, Litt. Sel. Cas. 281 (decided in 1821), the same court decided that where a grant calls to exclude entries belonging to other persons by name, and designating quantity included within the boundaries of the patent, the patentees cannot recover in ejectment without showing that the defendant is not within the bounds of the excluded claims. See *Taylor* v. *Taylor*, 3 A. K. Marsh. 18.

Judge Sydner, in delivering the opinion of the court in *Bryan* v. *Willard*, 21 W. Va. 65, intimates that in such a case the burden of proof would be upon the plaintiff to show that the land in controversy was not within the excepted lands, though this expression of opinion was not necessary to the decision of the case. Afterwards the question came before that court in the case of *Stockton* v. *Morriss*, 39 W. Va. 432. The exception in the grant in that case designated the claimants of a portion of the land excepted and its location, but as to 985 acres thereof the exception was, as in the case at bar, made up of prior claims, without designating who the claimants were, or where the land was located. The court held that the burden of locating the excepted claims was upon the plaintiff, in order to make out a *prima facie* case for recovery. 39 W. Va. 432. In *Scott* v. *Ratliffe*, 5 Pet. 81-86, the Supreme Court of the United States (Chief Justice Marshall delivering the opinion) held an instruction to be correct which directed the jury "that if the plaintiffs did not show to their satisfaction that the defendants resided within the plaintiffs' grant, and outside of the land excepted in the grant for Preston and Garrard, they ought to find for the defendants." See *Hawkins* v. *Barney*, 5 Pet. 457.

In the case of *Land Grant Co.* v. *Dawson*, decided by that court at its last term, and reported in 151 U. S. 586, the plaintiff claimed under a deed which covered a large tract of land as a whole. The deed contained the following exception: "Excepting from the operation of this conveyance such

tracts of land, part of the said estate, hereby warranted not to exceed 15,000 acres, which the parties of the first part have heretofore sold and conveyed, by deeds duly recorded, on or prior to January 25, 1870.'' The court said in that case that the burden was upon the plaintiff to show its title to the identical land claimed by the defendant, and as it did not take title to 15,000 acres of the Maxwell land grant, by reason of the fact that its grantors had already conveyed this amount of land, it was incumbent upon it to show that the land it sued to recover had not been previously conveyed, and hence it had taken title to it under the deed. Id., 151 U. S. 604.

It would seem, therefore, both upon principle and upon authority, that where the exterior boundaries of a survey upon which a grant or deed is founded include lands which have been excepted from the operation of the grant, or lands which have been aliened since the grant was issued, and which have been excepted from the operation of the deed, and the plaintiff's title papers disclose such exception or such alienation, it is not sufficient for such plaintiff, in an action of ejectment, to connect himself with the Commonwealth, and show the exterior boundaries of his grant, but he must also prove that the lands in controversy are not within the excepted or aliened lands, in order to make out a case which will entitle him to recover in an action of ejectment. The plaintiff, having failed to show that the land sued for was a part of the land granted by the State to Gen. Lee, was not entitled to recover on the ground that he was the legal owner of the Commonwealth's title; and the court properly overruled his motion to set aside the verdict, on the ground that it was contrary to the law and the evidence.

But the plaintiff, in his efforts to make out his case, did not rely solely upon the claim that he had traced his title from the Commonwealth to the land in controversy. He introduced proof tending to show that he and those under whom

he claims had been in possession of the land in controversy, under color of title, for the statutory period, claiming it as their own, and that upon this ground he was entitled to recover it.   He also offered evidence tending to show that the defendants, or those under whom they claim had leased the land sued for, or some part thereof, from parties under whom the plaintiff claims, and that the defendants were estopped from questioning his title unless they showed that they had disclaimed holding under such lease, and had brought notice of such disclaimer home to the plaintiff, or those under whom he claims.

Upon these questions, it is not clear that the evidence improperly admitted and the instructions erroneously refused and erroneously given may not have influenced the jury to the prejudice of the plaintiff.   Since it is not manifest that no injury was done the plaintiff by such erroneous rulings, the verdict cannot be sustained, under the settled practice of this court.   *Bank* v. *Waddill*, 27 Gratt. 448-451; *Brighthope Railway Co.* v. *Rogers*, 76 Va. 443-451; *Kincheloe* v. *Tracewells*, 11 Gratt. 588, 589.

I am of opinion, therefore, that the judgment of the Circuit Court of Patrick county should be reversed, the verdict set aside, and a new trial ordered to be had, in accordance with the views expressed in this opinion.

The other judges concur in the opinion of *Buchanan*, J.

REVERSED.