**James L. MOUNT and Helen R. Mount, husband and wife, Appellants,**

v.

**Mary Jane CURRAN, individually and as executrix for the Estate of Thomas E. Curran, Jr., and the Parrish Company, a partnership, Appellees.**

No. 4872.

Supreme Court of Alaska.

July 24, 1981.

---

Clem H. Stephenson, Fairbanks, for appellants.

* Bryner, Chief Judge, and Singleton, Judge sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. The parties apparently have located no copies of the original Robe Map itself. The Map was reproduced by Karl Theile, United States Surveyor General, in 1922.

Julian L. Mason, Baily & Mason, Anchorage, for appellees.

Before RABINOWITZ, C. J., CONNOR and BURKE, JJ., BRYNER, Chief Judge, and SINGLETON, Judge, Court of Appeals Judges.*

## OPINION

RABINOWITZ, Chief Justice.

This is an appeal from a grant of partial summary judgment on an adverse possession claim. We reverse.

An action to quiet title to a tract of land in Fairbanks was brought by Mary Jane Curran, Thomas Curran, and the Parrish Co., their successor in interest. Curran alleged that she was the record title holder and owner in fee simple of Lots 6, 7A, and 7B, Block 95, of the Fairbanks townsite, as laid out in the survey known as the Robe Map of 1909.[1]

James and Helen Mount, owners of Lot 8 (an adjacent lot), answered that portions of these lots (6, 7A, and 7B) were theirs by right of adverse possession. The claim was based on the Mounts' occupancy of the disputed portions since 1973, and occupancy before that time by their predecessor in interest, Simeon Bulavski, who owned the property from 1935 to 1973. The 1973 conveyance of Lot 8 to the Mounts from Simeon Bulavski described Lot 8 by metes and bounds, and this description results in an overlap with Lots 6, 7A and 7B as claimed by Curran and described in the Robe Map.[2]

Parrish Co. moved for partial summary judgment on its claim as to ownership of Lot 7A. The history of that particular portion differs from that of Lots 6 and 7B in that 7A was acquired from its then-record

2. The dispute seems to be grounded in an ancient discrepancy between the 1909 survey and the boundaries as recognized and utilized by the occupants, shown by fences on the lots. It was apparently this same discrepancy which led to the litigation in *Ringstad v. Grannis*, 159 F.2d 289 (9th Cir. 1947), *appeal after remand*, 171 F.2d 170 (9th Cir. 1948). However, as Curran points out, that case is of no relevance to the specific question here presented.

owner, one Harry Bisoff, by the City of Fairbanks on February 2, 1962, following foreclosure on a tax lien. The City held the property until 1973; then it sold Lot 7A to the partnership of "Curran and Hodges."[3] Parrish Co.'s basis for summary judgment was that, even conceding actual occupancy of the disputed portions by the Mounts and their predecessor in interest (Bulavski) since 1936, the intervention of the tax foreclosure would defeat the adverse possession claim.[4]

Following argument and briefing, the superior court ruled that, as a matter of law, the Mounts had no claim to Lot 7A.[5] The Mounts moved to set aside the partial summary judgment, submitting various materials in support of the motion. The superior court denied the motion and this appeal by the Mounts followed.

As noted above, it is stipulated for purposes of this appeal that Bulavski openly and hostilely occupied the disputed portions of land from 1936 on. Counsel for the Mounts has awkwardly framed the issue of the 1962 tax foreclosure in terms of whether Bulavski should be deemed to have been the owner against whom the taxes should have been assessed. This issue we regard as irrelevant. The question is whether the City by its foreclosure on Bisoff's land could obtain that interest in the disputed portions which Bisoff had, by stipulation, already lost by adverse possession to Bulavski. We think not.

This conclusion finds support in the text of AS 34.25.080, which pertains to validating tax deeds. Of particular significance is section (c), which provides:

> The deed, when executed, is sufficient to convey all of the right, title or interest of the delinquent owner or a person in privity with him in the real property sold to the purchaser at the sale.[6]

The City's tax deed thus conveyed all of Bishoff's interest, but this did not, as of the time of the tax foreclosure, include those portions already obtained by Bulavski by adverse possession.

Case law from other jurisdictions also supports this conclusion. In *DeRosa v. Spaziani*, 142 N.Y.S.2d 839, 844 (N.Y.Sup.1955),

---

**3.** From Curran and Hodges, the property passed into the Estate of Thomas E. Curran, Jr., of which Mary Curran is the executrix. The property was subsequently sold to the Parrish Co.

**4.** At the time of foreclosure, former § 16–1–125r, ACLA 1949, read:

> *Title of city.* When a city acquires real property under foreclosure procedures, the conveyance vests in the city title to the property, free from all liens and encumbrances except unpaid taxes and assessments duly levied for local improvements to the property, and liens of the United States and the Territory.

In 1963, this provision was replaced by former AS 29.10.531, which contained only minor changes not relevant here.

**5.** The trial judge ordered that final judgment be entered as to Lot 7A, pursuant to Civil Rule 54(b). The dispute as to the remaining lots was apparently resolved in favor of the Mounts following trial.

**6.** Similarly, former § 22–3–42a of ACLA 1949 provided in part that "[a tax] deed, when executed, shall be sufficient to convey all of the right, title or interest of the delinquent owner or any person in privity with him in the real property so sold to the purchaser at the sale; . . ."

We do not interpret this as being rendered ineffective by former § 16–1–125r of ACLA 1949, quoted in note 4 *supra*. Nor do we think that the limitation of actions in AS 34.25.-080(d), relied upon by Curran in response to other aspects of the Mounts' arguments, bars this argument. We do not regard Bisoff's loss of the disputed lands to Bulavski as a "defect or irregularity" in the assessment or foreclosure proceedings which would be barred by the statute. That provision reads as follows:

> (d) All defects or irregularities in the delinquent tax roll, notices, presentations of delinquent tax roll to a court, proofs of notice, orders of sale, confirmation of sale or other proceedings before or in connection with the sale, in obtaining the order of the court for the sale, or in the making or conducting of the sale by the clerk of the city, or by another person authorized to make or conduct the sale, the lack of an order confirming the sale, and the lack of, or failure to issue, a certificate of sale and purchase, shall be disregarded if no suit is filed in a court of record in the judicial district in which the real property affected by the deed is located within 10 years from the date of the deed, to have the deed set aside, altered or otherwise changed, or reformed.

the court held that foreclosure of a tax lien against the record owner of property, a strip of which was adversely possessed by a neighbor, "did not cut off the title by adverse possession to the land occupied by the encroachment which already had fully vested in plaintiff's [adverse occupant's] predecessors in title."

*Palm Orange Groves, Inc. v. Yelvington,* 41 So.2d 883 (Fla.1949), reaches a similar result. There again, there was apparently a discrepancy between the boundaries as used by the occupants and the boundaries as described in the land records. The Yelvingtons, upon acquiring one lot by obtaining a tax deed, claimed that their neighbor, Palm Orange Groves, was using part of the lot described in the Yelvingtons' tax deed. The court held that, since Palm Orange Groves had been in possession of the disputed area for forty to sixty years, its claim of ownership prevailed: "The claim of [the adverse possessor] as to the land in question is superior to [the tax deed holder's] paper title ... [and] to the tax lien of the county and state ...." *Id.* at 885. Further authority for this position is given in the footnote.[7]

This conclusion renders it unnecessary for us to address the other points put forward by the Mounts.[8] The case must be remanded to the superior court for determination of whether the presumption, stipulated for purposes of this appeal, is an accurate one— *i. e.,* whether Bulavski in fact occupied the property openly and hostilely from 1936 until the time of the tax foreclosure.[9]

The decision granting summary judgment is reversed and the case remanded for further proceedings consistent with this opinion.

MATTHEWS, J., not participating.

---

7. *Wood v. Mayo,* 240 La. 109, 121 So.2d 503, 506 (1960) (although acquisitive prescription does not run against the state, that rule is inapplicable where party's predecessors in title had already possessed the property continuously for 33 years before the adjudication to the state and were already the owners at the time of that adjudication); *King v. Fasching,* 234 S.W.2d 549, 551 (Mo.1950) (law recognizes the right of one claiming title by adverse possession to question a tax deed where the adverse possession antedated the lien for taxes); *Adams v. Parks,* 435 P.2d 122, 125–26 (Okl.1967) (tax deed could not defeat adverse possession claim where party's predecessors had perfected prescriptive title to the strip, and had been in adverse and exclusive possession of it for more than fifteen years prior to the tax sale and resale upon which other party's deed was based); *Harvey v. Peters,* 227 S.W.2d 867, 871 (Tex.Civ.App.1950) (if title by limitation was perfected before judgment rendered in tax suit brought by municipality, limitation owners were not bound, nor was their limitation title affected, by the tax suit to which they were not parties); *Reusens v. Lawson,* 91 Va. 226, 21 S.E. 347, 352 (1895) (if adverse possession is long enough to bar original owner's right of recovery before forfeiture to commonwealth takes place, original owner has lost title by

adverse possession and commonwealth does not acquire it through the foreclosure).

*Contra, Whiteman v. Mattson,* 446 P.2d 904, 908 (Colo.1968).

8. The Mounts have argued that the 1960 tax assessment should be deemed to have been made on the property based on the boundaries as actually occupied by the owners, rather than as described on the land records; that the City lost the property to the Mounts and their predecessor by adverse possession during the period 1962–72; and that Bisoff, the record owner of Lot 7A, effectively redeemed the land. Because we are ruling in favor of the Mounts on the grounds noted in the opinion, we need not address these arguments or the appellees' responses to them.

Nor is there any issue before the court as to whether any liability should be borne by the Mounts or their predecessors in interest for a proportionate share of the tax burden on the disputed tract during the pertinent period.

9. Apparently this issue was resolved in the Mounts' favor as to the adverse possession claim on the other portions of Lot 7 contested between the parties. We express no opinion as to whether the "law of the case" controls in this situation. *See Stepanov v. Gavrilovich,* 594 P.2d 30 (Alaska 1979).