## Wytheville.

### CARTER v. HAGAN.

August 11.

Absent, *Moncure*, P.

1. A patent is the consummation of the legal title, and passes to the grantee the legal estate and seizin of the Commonwealth. Accordingly, where a patent contains a reservation in favor of a prior claimant who relies only on his entry and survey, and, under these circumstances, a patent including the land so claimed and without a reservation, is issued to a junior patentee, the latter acquires the legal title, and must prevail in a court of law over such prior claimant, whatever may be the date of his survey.

2. A party claiming under such prior survey must resort to his *caveat* to prevent the emanation of a grant to his adversary, and if he fails in that, without sufficient excuse, he is without remedy, unless by some proceeding in equity, having for its object the annulment of the patent upon equitable grounds.

3. Where a patent contains a reservation, the title and seizin of the land so reserved does not pass to the patentee, but remains in the Commonwealth.

This was an action of ejectment brought originally in the county court of Wise county, in October, 1871, by Patrick Hagan against Henry Frazier, to recover a tract of land, described by metes and bounds, and damages for the detention thereof. Frazier having died, his lessor, Dale Carter, was entered as a defendant to the action, and pleaded not guilty ; but, before a trial was had, Carter died, and thereupon, by consent, the action was revived against the appellant, Eliza C. Carter. There was a judgment for the plaintiff, and a writ of error and *supersedeas* thereto was awarded the defendant by one of the judges of this court.

The facts are sufficiently stated in the opinion of Judge *Staples*.

*W. H. Burns*, for appellant.

*J. A. Campbell*, for appellee.

STAPLES, J., delivered the opinion of the court.

The facts agreed show that on the 30th of April, 1796, a. patent for 25,000 acres of land issued to Justin Barnum. Upon the face of this patent is the following reservation: "But it is always to be understood that the survey upon which this grant is founded includes seven hundred and fifty acres of prior claims, exclusive of the above quantity of 25,000 acres—all of which having a preference by law to the warrant and right upon which this grant is founded, liberty is reserved that the same shall be firm and valid, and may be carried into grant or grants, and this shall be no bar in law or equity to the confirmation of the title to the same, as before mentioned and reserved."

The prior claims thus referred to were founded upon an entry and survey in favor of Henry Smith, to whom a patent was afterwards issued on the 24th of August, 1798, for the seven hundred and fifty acres.  Before the patent to Smith, however, but subsequent to that of Barnum, Oliver Wolcott had made an entry and survey, and obtained a grant for 50,000 acres of land, which included the 25,000 acres granted to Barnum, and the seven hundred and fifty acres subsequently granted to Smith.  In the Wolcott patent, however, there is no such reservation in favor of prior claims as is. contained in the Barnum patent.  The Wolcott patent, therefore, covers the seven hundred and fifty acres—the land in controversy.  That patent, although founded upon a. junior survey, must prevail in a court of law over the.

Carter v. Hagan.

Smith patent, because in that court the legal title is alone
looked to to determine the rights of the parties. The
patent is the consummation of the legal title, and passes
to the grantee the legal estate and seizin of the Common-
wealth without regard to any previous entry and survey.
Whatever, therefore, might have been the equitable rights
of Smith founded upon his prior entry and survey, they
must yield in a court of law to the older grant in favor of
Oliver Wolcott and those claiming under him. The learned
counsel for the defendant, without controverting the sound-
ness of this rule, insist that it does not govern this case.
Their proposition is, that all the lands contracted in the
Barnum patent, including the 750 acres, passed to Barnum
the patentee, liable only to be divested by a grant to Smith
for the 750 acres. In other words, the patent to Barnum
conferred upon him the legal title to the 750 acres, subject
only to the reservation in behalf of Smith, and upon the
emanation of a grant to Smith the legal title was thereupon
divested out of Barnum and vested in Smith by operation
of law, so that no title to the 750 acres passed by the grant
to Oliver Wolcott. To sustain this view the case of *Hopkins
and Watson* v. *Ward et als.* 6 Munf. 38, is relied on with much
confidence.

In that case the patent was for 72,000 acres of land within
certain specified metes and bounds, including also 42,000
acres of prior claims, exclusive of the 75,000 acres.

The plaintiff in the court below, claiming under the
patent, asserted title to all the lands embraced within the
metes and bounds of the patent. The defendants, on the
other hand, were mere intruders upon the land—without
even a color of title; they did not attempt to show the ex-
istence of any prior claim; they maintained that whether
there were or not such prior claims, no title to the 42,000
acres passed to the patentee, but was reserved to the Com-
monwealth; and being so reserved, the plaintiff had no title

and could not recover any part of the same. This court held not that 42,000 were excepted out of the operation of the patent, but that prior claims, if such there were, to the amount of 42,000 acres were so excepted. Whenever it could be shown there was a prior claim, the land covered by such claim did not pass to the patentee, but was reserved out of the grant. If, in fact, there were no such prior claims, the patentee was entitled to recover all the land embraced within the metes and bounds of the patent, although in excess of the 72,000 acres. This decision was based upon the idea that whatever is included within the grant necessarily passes by it, except such portion as is capable of being identified as part of the reservation.

This case was followed by that of *Nichols* v. *Covey*, 4 Ran. 365. In this latter case the reservation of prior claims in the patent was in the identical language used in the patent before us. One of these prior claims was an entry of one hundred acres in the name of Hall & Grayson. This entry was never surveyed, but was abandoned by the parties, and another entry made long afterwards in the name of Hall alone for the same tract, which was surveyed in 1809 and carried into grant in 1815.

It was contended in that case that the first entry made by Hall & Grayson having become forfeited by a failure to survey the land and to obtain a patent for the same, it ceased to be a prior claim, and was therefore taken out of the reservation and passed to the first patentee. In other words, that the first patentee would hold the land against all the world, save the prior claimant and the very right under which he claimed.

But the court unanimously held that the land embraced in the reservation did not pass at all to the patentee; that if the first equitable claimant does not perfect his right, any other person may enter the land as waste and unappropriated and obtain a patent therefor.

Carter v. Hagan.

Judge Coalter, in delivering the opinion of the court, utterly repulsed the idea that the patentee obtained any title whatever to the reserved lands. In the language of the learned judge, "such patentee says he will not pay for the reserved land or subject himself to pay taxes for it, because the Commonwealth cannot grant it to him, and therefore he desires it may be reserved out of his grant, and that he may pay only for the residue, and be taxed accordingly." It will thus be perceived that both the cases cited sustain the view that where there is a prior claim reserved out of the patent capable of being identified, the land embraced in such prior claim does not passed to the patentee, and that he has no interest in or title to the same. On the contrary, such title remains in the Commonwealth until regularly patented as in other cases.

The tract of 750 acres reserved to prior claimants in the Barnum patent did not therefore pass to Barnum, nor was it in any manner affected by that patent. It remained precisely as though no such patent had ever issued. It was covered by the prior entry and survey of Henry Smith, which conferred upon him merely the preferable right to a grant from the Commonwealth. For while the entry and survey authorize the proprietor to demand a grant, they do not in themselves confer it. Nor do they amount to such an appropriation of the land as will render void a patent obtained by a junior entry and survey.

If, therefore, another person enter and surveys the land and obtains a patent before the first entry and survey are carried into grant, such patent will carry the legal title and must prevail in any contest in a court of law, over a junior patent, whatever may be the date of the survey upon which it is founded. The party holding the prior entry and survey must resort to his *caveat* to prevent the emanation of a grant to his adversary, and if he fails in that without sufficient excuse, he is without remedy unless indeed by some

Carter v. Hagan.

proceeding in a court of equity, having for its object the annulment of the patent upon equitable grounds.

If these views be correct, the Oliver Wolcott patent conferred upon the patentee the legal title to the land in controversy, and that patent being prior to the Henry Smith grant, must prevail in the present action of ejectment. The defendant in the court below having connected himself with the Wolcott patent, is entitled to the land, and the circuit court properly entered judgment for him.

JUDGMENT AFFIRMED.