## JOSEPH SCHLITZ BREWING COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 232. Argued April 11, 1901.—Decided May 20, 1901.

Bottles and corks in which beer is bottled and exported for sale are not "imported materials used in the manufacture" of such beer within the meaning of the drawback provisions of the customs revenue laws, although the beer be bottled and corked, and subsequently heated, for its better preservation.

THIS was a petition for a drawback upon hops and barley to the amount of $2371.35, and upon bottles and corks to the amount of $9817.97, used in the manufacture of bottled beer for export.

The Court of Claims made a finding of facts, the substance of which is set forth in the margin, and gave judgment for the first item, but rejected the second, and the claimant appealed.[1]

---

[1] *Findings of Fact.*

The following are the facts of the case as found by the court:

I. The claimant is a corporation, organized under the laws of the State of Wisconsin.

II. Between the 1st day of February, 1893, and the 26th day of October, 1894, the claimant exported from the port of Milwaukee, Wis., bottled beer. The hops, barley, bottles and corks used in the manufacture of this bottled beer had been imported into the United States from foreign countries, and duties had been paid thereon upon importation. The bottled beer was manufactured by the claimant at Milwaukee, Wis. The imported materials used in the manufacture, when exported, were identified, the quantity of the materials used and the amount of duties paid thereon ascertained, and the fact of the manufacture of the articles in the United States and their exportation were determined under regulations prescribed by the Secretary of the Treasury. The total amount of the duties paid on the materials mentioned so used and exported was $12,189.32, divided as follows: Upon the bottles and corks, $9817.97; upon the hops and barley, $2371.35.

III. The Treasury Department has not refused to pay the drawback upon the hops and barley, but such drawback could be paid under the regula-

*Mr. William B. King* for appellant. *Mr. George A. King* was on his brief.

---

tions of the department. It refuses to pay the drawback upon the bottles and corks for the reason stated in the following official letter dated March 24, 1893:

(Here follows certain correspondence summarized in the opinion.)

VII. The manufacture of beer for bottling for export differs from the manufacture for ordinary domestic use, both because the materials must be selected with greater care, and the process must be conducted differently in order that the bottled product may keep without change under varying conditions of climate, temperature, position and transportation, and the beer preserve purity and clearness under all such varying conditions. Turbidity of bottled beer made for exportation must especially be avoided, as this renders the beer commercially unsalable. This is chiefly caused by the precipitation of albuminoids contained in the beer, and the differences in the process of manufacture between domestic beer and bottled beer for export are chiefly intended for the elimination of these albuminoids. It may also be caused by the germination of living yeast cells, and this is prevented by the process of pasteurization.

IX. After beer intended for bottling for export is placed in the barrels the following processes occur:

The barrels are hoisted to the required height of the filling machine, the stamp is taken off, canceled and replaced, the keg is opened, a faucet entered in the lower hole, and the beer drawn from the barrel into the filling machine and through a proper disposal of siphons into the bottles. The bottles are then sent to the corking machines and corked; a thin metal cap is placed over the cork for the protection of the cork and a wire attached to the neck of the bottle and wound over the cork. The bottles are then placed in the steaming boxes and these boxes carried to a steaming vat which is filled with water and steam turned into the water, raising its temperature to about 150° and remaining at that temperature for about one hour, when it is cooled down to about 80° or 90°. This process, known as pasteurizing, is for the purpose of destroying living yeast cells, and is necessary for beer bottled for export.

Pasteurizing can be done in a large vessel before bottling, but the beer would become again impregnated by contract with the atmosphere when afterwards drawn into bottles.

This process must be conducted carefully, because if the temperature rises too high the beer gets an unpalatable taste and the albuminoids remaining in it are more apt to be eliminated, resulting in a loss of clearness, which renders the beer unsalable.

This pasteurization may be omitted in the case of bottled beer for local use.

The bottles, previous to their use, undergo a special washing process with hot water and soda, so arranged that the bottles are filled and emptied con-

*Mr. Assistant Attorney General Pradt* for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This is a claim for a drawback of duties upon certain imported bottles and corks alleged to have been used in the manufacture of bottled beer, subsequently exported.

By § 25 of the Act of October 1, 1890, c. 1244, 26 Stat. 567, 617, " where imported materials on which duties have been paid, are used in the manufacture of articles manufactured or produced in the United States, there shall be allowed on the exportation of such articles a drawback equal in amount to the duties paid on the materials used, less one per centum of such duties." The object of this section is evidently to stimulate domestic manufactures by allowing to the manufacturer a rebate of duties paid upon imported materials used by him in such product.

The theory of the claimant in this connection is, that bottled beer is really a different article from ordinary beer, and requires

---

tinuously. They are then washed in a tank filled with lukewarm water on the outside by hand and on the inside by brushes in the washing machine, and then rinsed with cold water before being placed in the racks to be filled. Old as well as new bottles are used.

X. In making bottled beer, from the time of purchase of the ingredients until the completion of the finished product the process must be so managed as to diminish the albuminoids. When prepared as stated in the foregoing findings, bottled beer can stand the heat at the equator without being spoiled.

XI. Beer bottled for export is understood to be beer intended for shipment, whether to domestic or foreign points, and for use other than local and immediate. When beer is bottled for local and immediate use, it may be the same beer as hereinbefore described and prepared in the same manner as for export, including pasteurization, or it may be the same beer prepared in the same manner without pasteurization, or it may be ordinary keg beer, differing from bottled beer for export in the particulars described in findings VII and VIII, and without pasteurization.

XII. When bottled beer is sold to retailers, it is delivered in cases of bottles, and an extra charge is made to the purchaser for the case and bottles, which charge is credited to his account on the return of the case and bottles. A similar practice obtains on the sale of the bottled beer by the case by retailers to their consumers.

a process of manufacture in which bottles and corks are a material ingredient. Its argument is thus stated in the petition:

" In the manufacture of beer for export it becomes necessary to kill the yeast in the beer in order to prevent second fermentation and consequent ruin of the beer, and, in order to destroy the germs of the yeast, the finished beer must be steamed to the degree necessary to kill such germs, and for that purpose the beer must be inclosed securely in some vessel to prevent the escape of the carbonic acid gas, and of all such vessels a bottle manufactured of glass is the one best adapted for that purpose. Such beer, after being subjected to the process of steaming, is materially different from the beer before being subjected to steaming, and in order to create such different article a closed glass bottle is indispensable, and the bottles and corks, forming a portion of the complete manufactured article known as ' bottled beer,' are, as well as the hops and barley entering into the same, a necessary component part of the article when completed and in a condition ready for export."

It seems there has been some difference of opinion among the Treasury officials upon this subject, since on March 31, 1886, the then Secretary of the Treasury decided, under a statute similar to the one above cited, that a drawback should be allowed, not only for the hops, rice and barley used in the manufacture of the beer, but for the bottles and corks, and in an official table of drawback duties, published August 17, 1886, bottles and corks imported and used in bottling beer were specifically named as entitled to the benefit of a drawback to the full amount of the duty paid. This ruling remaining in force until October 28, 1890, when the Assistant Secretary decided that imported bottles used in the bottling of fermented liquors, made here from domestic grains and hops, were not entitled to a drawback under the Tariff Act of 1890; but, notwithstanding this ruling, it would appear that the drawback continued to be allowed and paid until March 24, 1893, when, in a letter to the collector of customs of New York, the Secretary overruled and rescinded the earlier decisions, and has since refused to allow the drawback.

In our view, the question presents no difficulty whatever.

Under the statute, the drawback is allowed only upon "imported materials  .  .  .  used in the manufacture of articles manufactured or produced in the United States," and subsequently exported. By this is undoubtedly meant that the imported materials must enter into and form one of the ingredients of the manufactured article, as did the hops and barley upon which the drawback was allowed, and properly allowed, by the Court of Claims. But the bottles and corks are not "imported materials" at all, but finished products, and usable for any liquor which the importer may choose to put in them. Neither are they ingredients used in the manufacture of exported or any other kind of beer, in any proper sense of the term, but simply the packages which the manufacturer, for the purposes of export, sees fit, and perhaps is required, to make use of for the proper preservation of his product. Bottled beer is still beer, made of the same ingredients as ordinary beer, though made with greater care, and to speak of the bottles and corks as ingredients of the beer is simply an abuse of language.

The fact that the beer must be steamed after bottling to a point necessary to kill the germs of yeast, and for that purpose must be enclosed in some vessel to prevent the escape of the carbonic acid gas, only shows that the beer is bottled before it is finally manufactured and ready for the market. This process certainly does not convert a bottle from an incasement into an ingredient. In this particular beer does not materially differ from a hundred other articles which require to be incased for their proper preservation. Thus, champagne and other sparkling wines must be bottled while yet effervescing, or they will lose the twang which gives them their principal value. The same remark may be made of Apollinaris and other effervescing waters, though not manufactured, and of certain canned fruits and vegetables which are required to be incased while hot and still in the process of preservation.

The claim is by no means so strong a one for the allowance of a drawback as was the *Tidewater Oil Co.* v. *The United States,* 171 U. S. 210, in which imported shooks were used in the manufacture of boxes, subsequently exported to foreign countries. We held in that case that boxes constructed of shooks, which

were imported in bundles of ends, sides, tops and bottoms, and needed only to be put together in the United States and in certain nailing and trimming, the whole value of which was equal to about one tenth of the value of the boxes, were not " wholly manufactured " in the United States within Rev. Stat. § 3019 and the Treasury Regulations of 1884.

It may be entirely true that, if this drawback be not allowed, the duties upon the bottles and corks will preclude the manufacturer from competing in foreign markets with foreign brewers, since he must necessarily export his beer in imported bottles, while his foreign competitor may use bottles manufactured in his own country. Yet this apparent hardship will not authorize us to do violence to the clear language of the statute. If the law afford him an imperfect relief, his remedy is by application to Congress for additional legislation, and not to the judicial power for a strained interpretation of the law already in force.

The judgment of the Court of Claims is right, and it is therefore

*Affirmed.*