Howry, J.,
delivered the opinion of the court:
Plaintiff company is engaged at St. Louis, Mo., in the business of brewing and bottling beer for domestic consumption and export. It brings this action under the general juris-kliction of the court for drawback authorized to be paid under section 30 of an act approved July 24, 1897 (30 Stat. L., 211,. reenacting similar previous statutes), for $27,000 as amounts paid by it as duties for imported cork used in the export of its bottled beer, but claimed to 'be so changed by treatment as to be manufactured cork in this country after its importation from abroad.
The court is indebted to the learned counsel on both sides for the full and able presentation of everything calculated to make clear the issues. But since two recent cases in this court, pertaining to claims for drawback, were affirmed on *396 appeal it is unnecessary to review the many decisions to which we are referred defining manufacturing, but rather to give, the results deduced from an examination of these cases as well as an examination of the statute under which the drawback is claimed.
Plaintiff imports cork from Spain and then treats it as set forth in the findings. After all the explanation the process-is simple. Selected corks, after being branded, are put into what the proof shows to be a machine or air fan, which is an unpatented invention, and all dust, meal, bugs, and worms removed. The corks are then thoroughly cleaned and washed by steaming, which removes the tannin and germs and makes them soft and elastic, and then are again exposed to blasts of air in the unpatented machine until dry. Following this they are put for a few seconds into a bath of glycerin and alcohol, the proportions of which are a trade secret, and thou dried by what is generally stated to be a special system, the nature of which is not shown. This bath closes up the seams and crevices when the corks receive a coating to prevent the beer from acquiring a cork taste. The corks are then dried by absorption of the chemicals covering them. The bath makes it easier to put the cork into the bottle and take it out, and the steaming of the corks destroys any germs that may be in them that would damage or spoil the beer if not sterilized.
In Tide Water Oil Co. (31 C. Cls. R., 90; 33 ibid., 514; 171 U. S., 210) the court of last resort in affirming this court has shown how raw materials may be subjected to successive prqcesses of manufacture, each one of which is complete in, itself, but several of which may be required to make the final product. “ Ordinarily,” the court said, “ the article so manufactured takes a different form, or at least subserves a different purpose from the original materials, and usually it is given a different name.” The illustrations given of logs first manufactured into boards, planks, joists, and scant-lings, and then by different processes fashioned into boxes, furniture, doors, windows, sashes, and trimmings, manufactured wholly or in part of wood, and of the steel springs of a watch made from iron ore and by a number of processes or *397 transformations called distinct processes of manufacture receiving a different name are in point as to what constitutes manufacturing. Underlying these illustrations and the general statement relating to what constitutes the ultimate product in the successive steps necessary to make a manufactured thing, is the idea that the process is supposed to produce some new article by the application of skill and labor, to raw materials.
The mere cleaning of Spanish cork by washing and steaming, so as to remove the tannin and germs and to make the corks soft and elastic, certainly does not produce a new article. The few seconds’ bath of glycerin and alcohol to which the corks are subjected, as shown here, may give a coating so as to prevent beer from acquiring a cork taste; and this application may close up the crevices in the corks, but anybody can be called a cork manufacturer, if that is all to be done, as there is no skill applied to make the thing over. Certainly there is nothing in washing and steaming imported cork and in soaking the imported material in glycerin and alcohol (no matter in what proportion) that changes the imported cork into manufactured cork. The chemical change that should be wrought in the imported article to make the article manufactured by the washing and steaming and then applying glycerin and alcohol certainly does not take the imported stuff very far away from its natural form. It is, apparently, not new. Like imported shells (Hartranft v. Wiegmann, 121 U. S., 609), where the outer layer of the shell is cleaned by acid and the second layer is ground by an emery wheel, the corks so treated do not seem to be any more manufactured than shells treated with acid and rubbed. They are still corks, having a distinctive name and character and use as cork. If'the application of glycerin and alcohol be in such proportions as to make tliis application a trade secret, equally can it not be controverted that cork has been as effectually treated everywhere by means employed to prevent the escape of bottled carbonic-acid gas. This does ■ not constitute- manufacture nor make persons steaming and | washing cork and applying glycerin and alcohol (in any . kind of proportion) manufacturers.
*398 But it is shown that the corks are put into a machine or air fan to remove dust, meal, bugs, and worms. How effectually this is done or can be done, or how different from the means taken by others who bottle beer or other effervescing liquid, does not appear. It does appear that the company puts the corks it uses to bottle export beer into what it proves and the finding shows to be an air fan. But this air fan, called a machine, is an unpatented something not shown, to the court, nor is there any description given either of the machine or how it .can remove any substance contained in the imported cork. Without a description of the unpatented fan and without some means of knowing precisely what is accomplished by its use, we can not assume that the cork is treated by this company materially different from cork treated by any other company or person along the same lines or different lines. In neither case is it clear that the cork undergoes any material change, so that it can not be said to be an article manufactured in this country.
If the process described by plaintiff in the use of what they say is a machine accomplishes results so valuable, we do not think there would be much delay in applying for and obtaining a patent upon it. We do not mean to say that it may not have some effect upon the cork, because we have accepted its statement that it has. At the same time we are unable to see that,, after all the treatment given to the imported article, it is converted into an article manufactured in this country.
The difficulty with plaintiff’s case is that when through treating the cork the finished character of the product is not apparent. The line of demarkation in an unfinished article and an article so finished as to make the thing treated a manufactured article is not always easy of distinction. Wo are not, however, able to say that this company manufactures cork any more than we can say that shooks imported to be used in the manufacture of boxes are materials within the intent of the statute (171. U. S., supra); or that the cork treated by plaintiff is in any better position as the basis of a claim for drawback than bituminous coal imported, but consumed as fuel in this country (163 U. S., 499). Neither possesses the right to a drawback.
*399 Foregoing considerations are sufficient to disallow the claim, because in case of doubt as to the interpretation of the statute the construction must be resolved in favor of the Government. (Swan & Finch Co., 190 U. S., 143.)
The other defense, that the corks in'question were not a part or ingredient of the beer exported and consequently not, in contemplation of law, exported at all, need not be more than briefly considered.
In Schlitz Brewing Company (35 C. Cls. R., 110; 36 ibid., 580; 181 U. S., 584) it is held that bottles and cork in which beer is bottled and exported for sale, though brought from abroad, are not imported materials used in the manufacture of such beer within the meaning of the drawback provisions of the customs-revenue laws. Plaintiff contends that the case at bar is dissimilar to that case, because here manufacture is shown, while there manufacture did not appear. But that case did include the claim for drawback of duties upon imported bottles and corks, and while it is true that the particular treatment of the corks imported shown here does not appear there, the court did say that bottles and corks were not imported materials at all, but finished products and usable for any liquor which the importer might choose to put in bottles. Such materials Avere “simply packages which the manufacturer (of beer), for purposes of export, sees fit and perhaps is required to make use of for the proper preservation of his product.” It is the beer manufactured that is exported for foreign competition. Certainly the manufacture of the beer for export is alone the object of the plaintiff’s business.
The use of corks to bottle the beer is a necessary part of the business, it is true, just as the use of the bottles is an essential part. But cork manufacturing in such' case, if it be manufacturing, is but the incident of the trade. The corks are washed, steamed, cleaned, fanned, and then dried; not to sell, but to put in bottles of beer for exportation. The beer is manufactured, bottled, and corked for export and use. The object of the drawback law was to build up an export trade and encourage manufactures in this country, where such manufactures are intended for exportation, by granting a rebate of duties upon the raw or prepared materials im *400 ported, and thus enabling the manufacturer to compete in foreign markets with the same articles manufactured in other countries. Tide Water Oil Company case (supra) so declares, and further that “ in determining whether the articles in question were wholly manufactured in the United States, this object should be borne steadily in mind.” So far as this record discloses, and so far as we have any knowledge of the subject, plaintiff is not competing in foreign markets in exporting the corks which hold its beer, because the corks are not sold as corks abroad. So, if this company has otherwise made out its case as to the claim of cork manufacture in this country, the method shown of treating and incidentally using the imported cork would hardly be said to encourage manufacture in this country within the meaning of the customs-revenue laws.
Petition dismissed.