## UNITED STATES v. GROGG et al.

(District Court, W. D. Virginia. December 12, 1925.)

**1. Eminent domain ⬅️158—Duty of court of its own motion to take notice of claimants' failure to locate reservations of prior claims from operation of grant.**

Where funds paid into court on condemnation of tracts, each less than 1,000 acres, were claimed under patent describing 17,000 acres, granting 16,000 acres undescribed, which reserved 1,000 acres in prior claims, also undescribed, it was court's duty of its own motion to take notice of claimants' failure to locate reservation of 1,000 acres of prior claims to show right to funds.

**2. Evidence ⬅️92—At common law, burden of proving negative rests on party asserting right.**

At common law, where right to relief is grounded on negative assertion, burden of proving negative is generally on party asserting such right.

**3. Evidence ⬅️93—Where subject-matter of negative averment is peculiarly within knowledge of adverse party, averment must be disproved by adverse party.**

Where subject-matter of negative averment is peculiarly within knowledge of adverse party, averment is taken as true, unless disproved by adverse party.

**4. Evidence ⬅️93—Commonwealth of Virginia has no peculiar knowledge of location of unappropriated or forfeited lands, within rule requiring such a party to disprove negative averment.**

Commonwealth of Virginia has no peculiar knowledge of location of unappropriated or forfeited lands, within rule requiring a party to disprove negative averment, there being no officer or agent of commonwealth whose duty it is to know such facts.

**5. Eminent domain ⊕158—Virginia statute, relieving plaintiff in ejectment, unlawful entry, etc., from locating reservations in grant, limited to proceedings specified, and not available to claimant of fund in condemnation proceedings.**

Code Va. 1919, § 5465, authorizing plaintiff in ejectment, unlawful entry, or detainer to recover so much of land within exterior lines of grant as are not proved by preponderance of evidence to be within reservations therein is limited to proceedings expressly mentioned, and is not available to claimants of fund paid into court in condemnation proceedings.

**6. Statutes ⊕181(2)—Hardship of locating undescribed reservations in grants of land held not to authorize courts to extend application of statute.**

That burden of locating undescribed reservations of lands, especially in very old grants, is very great hardship, held not to authorize court in extending application of Code Va. 1919, § 5465, to proceedings not provided for therein.

**7. Statutes ⊕212—Court could not presume that Legislature intended statute specifically applicable to ejectment, unlawful entry, or detainer to apply to all controversies involving title to land.**

Court could not presume that Virginia Legislature, in enacting Code Va. 1919, § 5465, expressly applicable to ejectment, unlawful entry, or detainer, intended to change location of burden of proof in all controversies involving title to land, in view of frequent use of other actions to litigate title.

**8. Eminent domain ⊕158—Statute changing burden of proof in ejectment, unlawful entry, or detainer actions held not in conflict with statute providing for distribution of funds in condemnation proceedings.**

Code Va. 1919, § 5465, changing burden of proving location of reservations from grant in certain cases of ejectment and unlawful entry or detainer actions, held not in conflict with section 4374, authorizing court to distribute funds in condemnation proceedings.

**9. Statutes ⊕236—Duty of court to liberally construe remedial statutes stops far short of carrying statute to purposes entirely beyond those mentioned therein.**

Duty of court to liberally construe remedial statutes stops far short of carrying statute to purposes entirely beyond those mentioned therein.

At Law. Condemnation proceeding by the United States against R. C. Grogg and others. On exceptions by claimant named and another to commissioner's report, providing for distribution of funds. Case remanded to commissioner for further proof.

John T. Harris, of Harrisonburg, Va., and Harrison, Long & Williams, of Lynchburg, Va., for Grogg and others.

Edw. C. Martz, of Harrisonburg, Va., for Crary heirs.

McDOWELL, District Judge. The questions to be considered have arisen in a condemnation proceeding brought by the government to expropriate for its Forest Reserve, inter alia, four tracts of land, each containing considerably less than 1,000 acres. The condemnation commissioners (section 4368, Code 1919) reported the amounts necessary as compensation and damages as to each tract separately, no exceptions to the report were filed, the report was confirmed, and the money was paid into court by the government. Thereupon (section 4374, Id.) a reference was made to a commissioner to report as to the proper distribution of the four funds. The only claimants who appeared before the commissioner were R. C. Grogg and E. B. Jones, who claimed all of the money under a patent issued to one James Swan, and Alexander P. Crary and other members of his family connection, to be referred to as the Crary heirs, who also claimed all of the money under the said Swan patent. The commissioner reported that Grogg and Jones were entitled to one-ninth, and the Crary heirs to eight-ninths, of each of the four funds. Grogg and Jones in due time filed exceptions to the commissioner's report.

The evidence adduced before the commissioner proved beyond doubt that each one of the four tracts, each of which is fully described by metes and bounds in the original petition to condemn, lies within the boundary set out in the above-mentioned Swan patent. This patent was issued by the commonwealth to James Swan in 1796. The patent describes a tract of land, lying then in Bath county, containing 17,000 acres, grants 16,000 acres thereof without description, and reserves 1,000 acres, also without description. The reservation in the patent reads as follows:

"But it is always to be understood that the survey upon which this grant is founded includes one thousand acres of prior claims (exclusive of the above quantity of sixteen thousand acres), which having a preference by law to the warrants and rights upon which this grant is founded, Liberty is reserved that the same shall be firm and valid, and may be carried into grant or grants, and this grant shall be no bar in either Law or Equity to the confirmation of the title or titles to the same as before mentioned and reserved, with its appurtenances."

The habendum reads: "To have and to hold the said tract or parcel of land, with its appurtenances, to the said James Swan

(except as before excepted) and his heirs forever."

[1] The claimants made no attempt to prove title by possession, and no effort was made by any one to locate the reservation or any part thereof; and if it was necessary for the claimants under the Swan patent to locate the reservation of 1,000 acres of prior claims in order to show a right to any one of the four funds, it is obvious that they have not shown that they are entitled to any of the money. Inasmuch as the reservation may embrace any one of the four tracts in question, and as the title to any one of said tracts may now be in the commonwealth, or may have been in an infant or an insane defendant, or in some one, possibly not named as a party, and who has never heard of this proceeding, it seems to me an unavoidable duty that the court, of its own motion, shall take notice of this failure of proof, if it be such. At least a prima facie showing of right to a fund in court in cases of this character should be required before the court can properly order disbursement of the fund.

[2] It is a familiar common-law rule that, where a right to relief is grounded on a negative assertion, or where a negative allegation is essential to the assertion of a right, the burden of proving the negative rests on the party asserting such right. 1 Greenleaf, Ev. (14th and 16th Ed.) § 78; 1 Wharton, Ev. (3d Ed.) §§ 356, 357; 1 Elliott, Ev. § 141; 5 Wigmore, Ev. § 2486, p. 440; 2 Ency, Ev. pp. 802, 803; 22 Corpus Juris, pp. 70, 71; 10 Ruling Case Law, p. 899. And this rule of the common law has been repeatedly enforced in this state. See Trotter v. Newton, 71 Va. (30 Gratt.) 582, 589, 590 (a caveat case); Nicholas v. Covey, 25 Va. (4 Rand.) 365; Carter v. Hagen, 75 Va. 557, 561, 562; Reusens v. Lawson, 91 Va. 226, 253, 254, 21 S. E. 347; Harman v. Stearns, 95 Va. 58, 67, 27 S. E. 601; Scott v. Ratcliffe, 5 Pet. 81, 86, 87, 8 L. Ed. 54; Armstrong v. Morrill, 14 Wall. 120, 143, 144, 20 L. Ed. 765 (ejectment cases); Boush v. Fidelity, etc., Co., 100 Va. 735, 739, 42 S. E. 877 (an action for malicious prosecution).

[3] There is an exception to the foregoing rule, often properly applied, as follows: Where the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by the other party. See 1 Greenleaf, Ev. (14th and 16th Ed.) § 79; 1 Elliott, Ev. § 141; 10 Ruling Case Law, § 53, p. 902; 3 Ency. Ev. pp.

804, 805; 22 Corpus Juris, pp. 70, 71. Whether or not this exception to the general rule can be applicable in any case where the claim to a fund is based on a claim to land under a grant containing an undescribed exception need not now be considered. In the present case no one has made any claim to any one of the four funds as owner of land excepted from the Swan patent. The commonwealth is not, and could not have been made, a party to this proceeding, and the commonwealth may be the owner of the reservation. The "prior claims" mentioned in the patent may have been entries subsequently abandoned, or surveys not carried into grant, or grants subsequently forfeited to the commonwealth for failure either to enter the land on the land books or to pay the taxes thereon; and as the commonwealth may be the owner of the 1,000 acres, the reason for applying the exception to the general rule wholly fails. It would be highly unreasonable to say that the burden of proof rests on a sovereign who is not and who could not be made a party to the proceeding.

[4] Again, it is impossible to hold that the commonwealth has peculiar knowledge of the location or bounds of unappropriated or of forfeited lands. There is no officer or agent of the state whose duty it is to know such facts.

[5] In 1904 the Virginia Legislature enacted a statute, now section 5465, Code 1919, which (Acts 1902-04, p. 898) reads as follows:

"Chapter 566.—An act to establish a rule of evidence in actions of ejectment and unlawful entry, or detainer involving the location of reservations within the exterior boundaries of grants or other conveyances. Approved January 2, 1904.

"1. Be it enacted by the General Assembly of Virginia, that on the trial of any action of ejectment, or unlawful entry or detainer, where it appears from the evidence that the land in dispute, or any portion thereof, is embraced within the exterior boundaries of a grant or other conveyance under which the plaintiff claims his title, which grant or other conveyance reserves one or more parcels of land within said boundaries from the operation thereof, but without sufficient description of said reserved land on the face thereof, or by reference on the face thereof to other grants or conveyances of public record, containing such sufficient description, by courses and distances, natural boundaries or land

marks, or otherwise of such reserved land, as will enable the same to be readily and accurately located by a competent surveyor, the plaintiff shall be entitled to recover so much of said land within said exterior lines, as does not appear by a preponderance of the evidence to be within the limits of any such reservation, and as he would otherwise be entitled to recover if such grant or other conveyance had contained no such reservation: provided, that this act shall not apply where it shall appear from the evidence that the defendant is in possession of such reserved land under claim of title thereto."

It has been earnestly insisted that this statute relieves the claimants under the Swan patent of the burden of locating the reservations. But the ultimate basis of every form of such insistence is a contention that the statute can properly be construed as embracing proceedings other than those expressly mentioned in the statute. While at first I thought otherwise, I now believe that this statute must be read as it was written. Whether the lawmakers intended to limit the benefit of the statute to the three cases expressly mentioned, or merely failed to think of other cases, may never be certainly known. But it is to be observed that there is not one word in the body of the statute or in the title which gives the slightest suggestion of an intent that the statute should apply to any case other than these expressly provided for both in the body of the statute and in its title. Indeed, if there had been a positive purpose to limit the operation of the statute to the three cases mentioned, the statute need not have been expressed otherwise than as it was written.

In Price v. Harrison, 72 Va. (31 Grat.) 114, 118, it is said:

"It was observed by Lord Tenterden that 'there is always danger in giving effect to what is called the equity of a statute; it is much safer and better to rely on and abide by the plain words, although the Legislature might have provided for other cases, had their attention been directed to them.' 6 B. & C. 475."

In Saville v. Va. R. & P. Co., 114 Va. 444, 452, 453, 76 S. E. 954, 956, it is said:

"It is contended that the construction insisted upon by the plaintiff in error is violative of the spirit or reason of the law. The argument would seem to concede that the contention is within the letter of the law. We hear a great deal about the spirit of the law, but the duty of this court is not to make law, but to construe it; not to wrest its letter from its plain meaning, in order to conform to what is conceived to be its spirit, in order to subserve and promote some principle of justice and equality, which it is claimed the letter of the law has violated. It is our duty to take the words which the Legislature has seen fit to employ and give to them their usual and ordinary signification, and, having thus ascertained the legislative intent, to give effect to it, unless it transcends the legislative power as limited by the Constitution."

In Jordan v. South Boston, 138 Va. 838, 844, 122 S. E. 265, 267, it is said:

" 'Courts of justice can give effect to legislative enactments only to the extent to which they may be made operative by a fair and liberal construction of the language used. It is not their province to supply defective enactments by an attempt to carry out fully the purposes which may be supposed to have occasioned those enactments. This would be but an assumption by the judicial of the duties of the legislative department.' Swift v. Luce, 27 Me. 283."

In Kellar v. James, 63 W. Va. 139, 142, 59 S. E. 939, 940, 14 L. R. A. (N. S.) 1003, it is said:

"The liberal rule of construction only requires that a statute be so enforced as to carry into effect the will of the Legislature as expressed in the terms thereof, and give, not stintedly or niggardly, but freely and generously, all the statute purports to give. This stops far short of carrying the statute to purposes and objects entirely beyond those mentioned in it."

The position here taken as to the necessity of locating the reservations in ancient grants is so highly unwelcome that I think it well to discuss some of the arguments made against it.

(1) It is said: "After the expropriation of the lands by the government the rights of the parties, as they existed in the land prior thereto, are transferred to the fund, and the same rules of evidence which would have been applicable in a contest over the possession of the lands, logically govern in a contest over the substituted fund."

While I agree that the substantive rights of the parties to and in the expropriated land are transferred to the fund, I can see no reason why such fact makes it "logical" or necessary that a statutory rule of evidence, in terms restricted to certain pro-

ceedings, shall be construed as also applying to a different proceeding. The claimants here cannot show a right to the funds, unless they show that they did at a certain time in the past own the tracts of land in question. The rules of evidence applicable to the present proceeding are those of the common law, except as changed by statute. And if the statute relied on as changing the common law is so expressed as not to include the present proceeding, it seems to me that it is not "logical" to construe it otherwise.

(2) It is argued: "The party who would, in an ejectment case, be adjudged entitled to the land, should in good conscience be entitled to the proceeds therefrom, regardless of the form of the proceeding."

The assumption that the present claimants could have recovered the tracts in question as plaintiffs in ejectment seems to me unauthorized. If, as is not improbable, the commonwealth owns the reservation, and, if no private person claimed it adversely to the present claimants, the latter could never have become plaintiffs in ejectment. And, if it be assumed that the owners of the reservation are private persons, I know of no reason for the assumption that the claimants under the Swan patent, if they had been plaintiffs in ejectment, would have been successful. No one can now say that the defendants could not have successfully borne the burden of proof placed on them by the act of 1904.

Again, the claimants under the Swan patent did not, while they had the right, become plaintiffs in ejectment, and I see no good reason for now putting them in that highly favored position, unless the act of 1904 can be read as applying to claimants who are not plaintiffs in ejectment or in unlawful entry or detainer.

[6] (3) It is urged that the burden of locating undescribed reservations, especially in very old grants, is a great hardship, and in some cases cannot be borne. The hardship is, of course, self-imposed. In St. Louis, etc., Ry. v. Taylor, 210 U. S. 281, 295, 28 S. Ct. 616, 621, 52 L. Ed. 1061, it is said:

"It is urged that this is a harsh construction. To this we reply that, if it be the true construction, its harshness is no concern of the courts. They have no responsibility for the justice or wisdom of legislation, and no duty except to enforce the law as it is written, unless it is clearly beyond the constitutional power of the law-making body."

See, also, Jos. Schlitz, etc., Co. v. U. S., 181 U. S. 584, 589, 21 S. Ct. 740, 45 L. Ed. 1013; Ladew v. Tennessee Copper Co. (C. C.) 179 F. 245, 252.

[7] (4) It is said that the intent of the legislature in enacting the act of 1904 was to change the location of the burden of proof "in all controversies over the title to land," as is shown by the mention of the only possessory actions for land in use in this state. If the argument had been that the intent was to change the location of the burden of proof in possessory actions for land, I would agree; but the argument as made implies entire ignorance on the part of the lawmakers of the frequently employed actions of trespass for damages for injuries to land, of suits to enjoin waste, of suits to quiet title and to remove cloud, and "controversies over the title to land" are constantly litigated in these forms of action. Moreover, no such supposition can properly be entertained. On the other hand, the wording of the act of 1904 creates a presumption that the intent was to change the common law only in the three possessory actions mentioned.

In Wabash R. Co. v. U. S., 178 F. 5, 11, 101 C. C. A. 133, 139, 21 Ann. Cas. 819, it is said:

"But the power was conferred and the duty was imposed upon the members of Congress, and not upon the courts, to determine whether or not these exceptions to the express terms of the proviso should be made. They did not make them, and that fact raises a conclusive presumption that they did not intend to make them, and it is not the province of the courts to do so."

[8] (5) It is urged that, as the act of 1904 (now section 5465, Code 1919) and the act of 1849 (now section 4374, Code 1919) are but parts of one statute (the Code of 1919), they should be reconciled. As one of these statutes relates only to procedure in certain cases of ejectment and of unlawful entry or detainer, and as the other relates only to the distribution of funds arising in eminent domain proceedings, I do not see that there is any conflict. The direction (in section 4374) to distribute the funds in expropriation cases as to the court seems right can be fully complied with, and still read section 5465 as it is written.

[9] (6) It is also argued that the act of 1904 is a remedial statute and should be liberally construed, so as to suppress the evil and advance the remedy. I think the

language hereinabove quoted from Kellar v. James, 63 W. Va. 139, 142, 59 S. E. 939, 940, 14 L. R. A. (N. S.) 1003, fully answers this argument. The duty to liberally construe remedial statutes "stops far short of carrying the statute to purposes and objects entirely beyond those mentioned in it."

As the controlling question here is the propriety of reading the act of 1904 as it is written, it seems advisable to add some further quotations bearing on that point. In Kain v. Ashworth, 119 Va. 605, 608, 89 S. E. 857, 858, it is said:

"The mere fact that a statute leads to results for which no good reasons can be assigned is not sufficient to justify the court in rejecting the plain meaning of unambiguous words. The absurdity which will justify a departure from such meaning can only be predicated of an intent and a consequent conclusion, which could not be attributed to men in their right senses."

In Denn v. Reid, 10 Pet. 524, 527 (9 L. Ed. 519), it is said:

"But it is not for the court to say, where the language of the statute is clear, that it shall be so construed as to embrace cases, because no good reason can be assigned why they were excluded from its provisions. We are unable to say why the benefits of this statute were given to those who held under deeds proved by the subscribing witnesses, and withheld from those whose deeds were proved by the acknowledgment of the grantor. In most cases, if not in all, proof by acknowledgment would be deemed more satisfactory than by witnesses; but, the Legislature having made a distinction between the cases, whether it was intentional or not, reasonable or unreasonable, the court are bound by the clearly expressed language of the act."

In Merchants' Insurance Co. v. Ritchie, 5 Wall. 541, 544, 545 (18 L. Ed. 540), it is said:

"It is certainly difficult to perceive a reason for discrimination between such suits and suits under the internal revenue laws; but, when terms are unambiguous, we may not speculate on probabilities of intention."

In Merritt v. Welsh, 104 U. S. 694, 702, 703 (26 L. Ed. 896), it is said:

"And it is better to submit to a temporary inconvenience than to set the laws all afloat by laying down a canon of construction which leaves the plain words, and seeks to spell out, or guess at, the supposed intent of the Legislature, contrary or supplementary to that which is clearly embodied in the words it has used."

In Thornley v. U. S., 113 U. S. 310, 315, 5 S. Ct. 491, 494, 28 L. Ed. 999, it is said:

"We are not called on to explain why Congress should apply one rule to the officers of the army and another to the officers of the navy. It is sufficient to say that it has clearly done so. If the law is unequal and unjust, the remedy is with Congress, and not with the courts."

See, also, U. S. v. Union Pacific R. R. Co., 91 U. S. 72, 85, 86, 23 L. Ed. 224; 25 Ruling Case Law, "Statutes," § 218, p. 963; Id. § 258, p. 1024, 1025; Black, Interpretation of Laws, p. 57; Sutherland, Statutory Construction, § 238, p. 315; Floyd v. Harding, 69 Va. (28 Grat.) 401, 405; Johnson v. Mann, 77 Va. 265, 279; Ryan v. Krise, 89 Va. 728, 733, 17 S. E. 128; Johnson v. Barham, 99 Va. 305, 309, 38 S. E. 136; Hollywood Cemetery Co. v. Commonwealth, 123 Va. 106, 110, 111, 96 S. E. 207.

It may be, as a general rule, that a claimant who has had opportunity to prove his right to a fund and has failed should be refused another opportunity; but for reasons peculiar to this particular case, and which are unlikely to occur again, I think it proper to once more refer this case to a commissioner, in order that the present claimants may prove, if they can, that some or all of the four tracts in question lie outside of the reservation in the Swan patent.